Carl E. HODGES, Plaintiff–Appellant,

v.

S.C. TOOF & COMPANY,
Defendant–Appellee.

Supreme Court of Tennessee,
at Memphis.

April 20, 1992.

Rehearing Denied May 26, 1992.

Tim Edwards, Glassman, Jeter, Edwards and Wade, P.C., Memphis, for plaintiff-appellant.

Carroll C. Johnson and Carroll C. Johnson, III, Johnson & Bateman, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

In this retaliatory discharge action, Plaintiff–Appellant Carl E. Hodges alleges Defendant–Appellee S.C. Toof & Company terminated Plaintiff's employment because of his jury service. At trial, the jury returned a verdict for Plaintiff and awarded him $200,000.00 compensatory and $375,000.00 punitive damages. The Court of Appeals, while upholding the jury's finding of retaliatory discharge, vacated the award of compensatory and punitive damages holding that under T.C.A. § 22–4–108, the exclusive remedy for an employee's discharge because of jury service was reinstatement and lost wages. We granted Plaintiff's application for permission to appeal in order to (1) decide whether the remedy provided by T.C.A. § 22–4–108 is exclusive and (2) reexamine the manner in which punitive damages are awarded in Tennessee.

Plaintiff Carl Hodges had been continuously employed by Defendant S.C. Toof & Company for some 19 years prior to his termination in January 1988. At the time of his firing, Plaintiff's position was that of assistant warehouse supervisor in Defendant's printing business. During his tenure, Plaintiff received 20 merit raises and had never been disciplined. In the summer of 1987 Plaintiff was called for jury service and sat as a juror in a three-month trial from mid-September to December 18, 1987. In early January 1988, Plaintiff was fired.

It is well established that when reviewing a judgment based on a jury verdict, appellate courts are limited to determining whether there is material evidence to support the verdict. *Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn.1985); *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn.1978). At trial, Plaintiff claimed he was discharged because of his lengthy jury service; Defendant claimed Plaintiff was discharged because of disobedience. The jury found Plaintiff was terminated because of his jury service. There being material evidence in the record supporting this verdict, it will not be disturbed on appeal.

### I.

In 1986 the Legislature amended T.C.A. § 22–4–108 by adding a new subsection providing:

(f)(1) No employer shall discharge or in any manner discriminate against an employee for serving on jury duty if such employee, prior to taking time off, gives the required notice pursuant to subsection (a) to the employer that he is required to serve.

(2)(A) Any employee who is discharged, demoted, or suspended because such employee has taken time off to serve on jury duty shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by such acts of the employer.

(B) Any employer who willfully refuses to rehire, or otherwise restore an employee or former employee shall be guilty of a misdemeanor.

*See* Act of March 17, 1986, ch. 583, § 1, 1986 Tenn.Pub.Acts 248 (codified at T.C.A. § 22–4–108(f) (Supp.1991)). The issue presented is whether the statutory remedy, namely "reinstatement and reimbursement for lost wages and work benefits," is the sole and exclusive relief available to an employee who has been "discharge[d] or in any manner discriminate[d] against ... for serving on jury duty." Resolution of this

matter necessitates an examination of the state of the law on retaliatory discharge at the time the statute was enacted. This is so because if a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive. *Turner v. Harris*, 198 Tenn. 654, 664, 281 S.W.2d 661, 665 (1955); *Nashville & C. R.R. v. Sprayberry*, 56 Tenn. 852, 854 (1874). However, where a common law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise. *See Leach v. Rich*, 138 Tenn. 94, 105, 196 S.W. 138, 140 (1917); *State v. Duncan*, 71 Tenn. 679, 684–88 (1879). Further, the Legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation. *Jenkins v. Loudon County*, 736 S.W.2d 603, 608 (Tenn.1987); *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 5 (Tenn.1986); *Equitable Life Assurance Co. v. Odle*, 547 S.W.2d 939, 941 (Tenn.1977).

■ The doctrine of employment at will, well established in Tennessee, allows either party to terminate the relationship with or without cause. *Payne v. The Western & A. R.R.*, 81 Tenn. 507, 517 (1884). However, in 1984 we recognized an exception to this rule and allowed a plaintiff to pursue an action for retaliatory discharge where she was terminated for exercising her rights under the Tennessee Workers' Compensation Law. *See Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441 (Tenn.1984). In *Clanton*, we found an action for retaliatory discharge necessary in order to prevent employers from circumventing their statutory obligations. *See id.* at 444–45. Importantly, *Clanton* is not limited to retaliatory discharge actions arising from an employee's exercise of workers' compensation rights, but rather makes the tort action of retaliatory discharge available to employees discharged as a consequence of an employer's violation of a clearly expressed statutory policy.

Given that our recognition in *Clanton* of a common law tort action for retaliatory discharge predated the 1986 amendment to T.C.A. § 22–4–108, that the Legislature is presumed aware of this prior recognition, and that the remedies subsequently provided by the amendment are not expressly stated to be exclusive, then the statutory remedies must be considered cumulative. *See Leach*, 138 Tenn. at 105, 196 S.W. at 140; *Duncan*, 71 Tenn. at 684–88. Plaintiff here was thus free to pursue a common law remedy in damages. Had the Legislature intended to limit relief to the statutory remedies, it could easily have done so.[1] Recent legislative action further convinces us the remedy was not intended to be exclusive. In 1989, and again in 1990, the General Assembly passed laws permitting employees to recover damages in addition to reinstatement and back pay if they are disciplined or discharged in violation of stated statutory policies. *See* T.C.A. § 49–50–1409 (1990) (1989 enactment relating to truth in education reporting); § 50–1–304(c) (1991) (1990 enactment relating to discharge of an employee for refusal to engage in or remain silent about illegal activities).

■ We caution that this Court has no intention of creating unwarranted judicial exceptions to the general rule of employment at will. *See Chism v. Mid–South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988). However, we are prepared to recognize a right to recovery for retaliatory discharge in cases where an employer violates a clear public policy evidenced by an unambiguous statutory provision. *Id.* (listing examples of clearly defined public policies which may warrant the protection provided by a retaliatory discharge remedy). We therefore reverse the Court of Appeals's judgment insofar as it holds that the statutory remedies provided by T.C.A. § 22–4–108 are exclusive, and reinstate the jury award of compensatory damages.

---

1. The Legislature frequently provides that a given statutory remedy is exclusive. *See e.g.* T.C.A. § 13–21–106 (1987) (injunction exclusive remedy for person affected by slum clearance order); § 53–7–218 (1991) (exclusive remedy and procedure for reviewing Commissioner of Agriculture's orders regarding meat inspection); § 57–5–109(f) (Supp.1991) (exclusive remedy and method of review regarding revocation of liquor license).

## II.

Having found the statutory remedies are not exclusive, we turn to the propriety of the punitive damages award. As early as 1840, this Court stated: "In an action of trespass the jury are not restrained, in their assessment of damages, to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages in respect of the malicious conduct of the defendant, and the degree of insult with which the trespass had been attended." *Wilkins v. Gilmore*, 21 Tenn. 140, 141 (1840). Shortly thereafter we explained that these damages should operate to punish the defendant and deter others from like offenses. *Polk, Wilson & Co. v. Fancher*, 38 Tenn. 336, 341 (1858). Now termed punitory, vindictive, or exemplary damages, they were legally appropriate "[i]n cases of fraud, malice, gross negligence, or oppression." *See Byram v. McGuire*, 40 Tenn. 530, 532 (1859). Exemplary damage awards became proper in two instances: first, if the wrongdoer acted with a fraudulent, malicious, or oppressive intent; and second, if the act, while not done with malicious intent, was done "in a rude, insulting or reckless manner, in disregard of social obligations, or with such gross negligence as to amount to positive misconduct." *See Louisville, N. & G.S. R.R. v. Guinan*, 79 Tenn. 98, 105 (1883). More recently we stated that punitive damages are available in cases involving fraud, malice, gross negligence, oppression, wrongful acts done with a bad motive or so recklessly as to imply a disregard of social obligations, or where willful misconduct or an entire want of care raises a presumption of conscious indifference to the consequences. *Inland Container Corp. v. March*, 529 S.W.2d 43, 45 (Tenn.1975) (citing cases). The contemporary purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future. *See Huckeby v. Spangler*, 563 S.W.2d 555,

558–59 (Tenn.1978). With these purposes in mind, and in the interest of fairness, we believe the time has come to reexamine, and modify, the manner in which punitive damages are awarded in Tennessee.

 The United States Supreme Court has recently addressed constitutional challenges to punitive damage awards. In *Browning–Ferris Industries v. Kelco Disposal, Inc.*, the Court held that the Excessive Fines Clause of the Eighth Amendment did not apply to civil punitive damages awarded between private parties. 492 U.S. 257, 260, 109 S.Ct. 2909, 2912, 106 L.Ed.2d 219, 228 (1989). Rather, the Eighth Amendment is implicated only in cases initiated by the government, either in the criminal process or other direct actions to inflict punishment. *See id.*

Last Term, the Court considered whether the traditional common law method[2] for assessing punitive damages violated due process under the Fourteenth Amendment. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). While the Court upheld the particular method employed by the Alabama courts in that case, it was not entirely clear whether the majority was giving its carte blanche approval to the common law scheme. *See* 499 U.S. at ——, 111 S.Ct. at 1055, 113 L.Ed.2d at 35 (Kennedy, J., concurring in the judgment). In any event, we agree with the Court's observation that "unlimited jury discretion ... in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities." 499 U.S. at ——, 111 S.Ct. at 1043, 113 L.Ed.2d at 20. Therefore, today we announce a new procedure aimed at providing specific criteria to guide a jury in deciding whether to award punitive damages and, if so, in what amount.

 As stated earlier, Tennessee presently allows punitive damages in cases involving fraud, malice, gross negligence, oppression, evil motives, conscious indifference, and reckless conduct implying "dis-

---

**2.** The Court characterized the "common-law approach" as that where a jury, considering the gravity of the wrong and the need for deterrence, determines the amount of the award, this amount then being reviewed by the trial and appellate courts. *See* 499 U.S. at ——, 111 S.Ct. at 1042, 113 L.Ed.2d at 18.

regard of social obligations." *See Inland Container*, 529 S.W.2d at 45. Whatever this may have once meant, by contemporary standards it is both vague ("social obligations") and overbroad ("gross negligence"). We agree with those States that have refined their laws to restrict the awarding of punitive damages to cases involving only the most egregious of wrongs. *Cf. Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723 P.2d 675, 680 (1986) (conscious action of a reprehensible character); *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me.1985) ("malicious" commission of a tort). By thus restricting the availability of punitive damages, we seek to avoid "dull[ing] the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct." *Tuttle*, 494 A.2d at 1361. In Tennessee, therefore, a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly.

▉▉▉ A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. *Cf.* T.C.A. § 39–11–302(a) (1991) (criminal definition of "intentional"). A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. *See First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn.1991). A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. *Cf.* T.C.A. § 39–11–302(c) (1991) (criminal definition of "reckless").

▉▉▉ Further, because punitive damages are to be awarded only in the most egre-gious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence.[3] This higher standard of proof is appropriate given the twin purposes of punishment and deterrence: fairness requires that a defendant's wrong be clearly established before punishment, as such, is imposed; awarding punitive damages only in clearly appropriate cases better effects deterrence.

▉▉▉ In a trial where punitive damages are sought, the court, upon motion of defendant, shall bifurcate the trial. During the first phase, the factfinder shall determine (1) liability for, and the amount of, compensatory damages and (2) liability for punitive damages in accordance with the standards announced above. During this phase, evidence of a defendant's financial affairs, financial condition, or net worth is not admissible.

▉▉▉ If the factfinder finds a defendant liable for punitive damages, the amount of such damages shall then be determined in an immediate, separate proceeding. During this second phase, the factfinder shall consider, to the extent relevant, at least the following:

(1) The defendant's financial affairs, financial condition, and net worth;

(2) The nature and reprehensibility of defendant's wrongdoing, for example

(A) The impact of defendant's conduct on the plaintiff, or

(B) The relationship of defendant to plaintiff;

(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5) The expense plaintiff has borne in the attempt to recover the losses;

(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in

---

**3.** Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

excess of the profit in order to deter similar future behavior;

(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

The trier of fact shall be further instructed that the primary purpose of a punitive award is to deter misconduct, while the purpose of compensatory damages is to make plaintiff whole.

After a jury has made an award of punitive damages, the trial judge shall review the award, giving consideration to all matters on which the jury is required to be instructed. The judge shall clearly set forth the reasons for decreasing or approving all punitive awards in findings of fact and conclusions of law demonstrating a consideration of all factors on which the jury is instructed.

### III.

In this case, the jury awarded Plaintiff $200,000.00 compensatory damages and $375,000.00 punitive damages. The compensatory award is affirmed, the punitive award vacated, and the case remanded for a trial on the issue of punitive damages. At this trial, which shall be conducted as a bifurcated proceeding, the jury will be instructed as to the clear and convincing standard of evidence. If the jury finds this standard satisfied, it will then fix the amount of punitive damages after being instructed in accordance with this opinion.

### IV.

Plaintiff further alleges that the trial court's denial of litigation expenses was error. While reasonable and necessary costs in the preparation and trial of a lawsuit may be assessed as discretionary costs under T.R.C.P. 54.04(2), the awarding of such costs is a discretionary matter with the trial court. *Lock v. National Union Fire Ins. Co.*, 809 S.W.2d 483, 490 (Tenn.1991). We find no abuse of discretion here.

### V.

Our decision today substantially changes Tennessee law governing the availability of punitive damages. The changes in the law we now announce are applicable to all cases presently pending in the trial and appellate courts.

For the foregoing reasons, the judgment of the Court of Appeals is reversed; the judgment of the trial court is affirmed in part, vacated in part, and the case remanded for a trial to determine whether, and in what amount, an award of punitive damages is proper. The costs of this appeal are taxed to the Defendant.

REID, C.J., and DAUGHTREY and ANDERSON, JJ., concur.

O'BRIEN, J., concurs and dissents. See separate opinion.

O'BRIEN, Justice, concurring and dissenting.

I concur with the lead opinion to the extent that I agree Mr. Hodges had a right of action against his employer in accordance with the provisions of T.C.A. § 22-4-108. I am not prepared to make a further incursion on the province of the legislature to establish public policy for the reasons stated in *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 558 (Tenn.1988) and *Harney v. Meadowbrook Nursing Center*, 784 S.W.2d 921 (Tenn.1990).

In *Smith v. Gore*, 728 S.W.2d 738 (Tenn. 1987), at p. 747, this Court clearly reiterated the rule which applies under the public policy doctrine:

"[It is generally recognized that the public policy of a State is to be found in its Constitution and statutes, and] only in the absence of any declaration in [Constitution and statutes] may [public policy] be determined from judicial decisions.

[In order to ascertain the public policy of a State in respect to any matter, the acts of the legislative department should be looked to, because a legislative act, if constitutional, declares in terms the policy of the State, and is final so far as the courts are concerned.] All questions of policy are for the legislature, *and not for the courts* ... [Hence the courts are not at liberty to declare a law void as in violation of public policy.] Where courts intrude into their decrees their opinion on questions of public policy, they in effect constitute the judicial tribunal as law making bodies in usurpation of the powers of the legislature," *Cavender v. Hewitt*, 145 Tenn. 471, 475–76, 239 S.W. 767, 768 (1921). (Emphasis supplied).

In *Chism v. Mid–South Milling Co.*, supra, at p. 555, this Court recognized that T.C.A. § 22–4–108(f) imposed a restriction upon an employer's right to terminate an employee for service on a jury and provided statutory sanctions for its violation.

On the basis of the court's opinion in *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441 (Tenn.1981), the majority now seek to boot strap appellant into position where he may have available a tort action of retaliatory discharge as a consequence of his employer's violation of a clearly expressed statutory policy. To accomplish this, while acknowledging that when a statute creates a new right and prescribes a remedy for its enforcement, the prescribed remedy is exclusive, *Turner v. Harris*, 198 Tenn. 654, 664, 281 S.W.2d 661, 665 (1955); *Nashville & C.R.R. v. Sprayberry*, 56 Tenn. 852, 854 (1874); the majority cites *Leach v. Rich*, 138 Tenn. 94, 105, 196 S.W. 138, 140 (1917), for the proposition that, where a common law right exists, and a statutory remedy is subsequently created the statutory remedy is cumulative unless expressly stated otherwise.

Clanton did not create an exception to the common law, employee at will rule. The Court merely recognized that implicit within the provisions of T.C.A. § 50–6–114 a cause of action existed to prevent an employer from utilizing retaliatory discharge as a device to defeat the rights of an employee under the Worker's Compen-sation Law. *See Harney v. Meadowbrook*, supra.

*Leach* is a somewhat abstruse case dealing with successive statutes concerned with replevin actions. The only thing it seems to say, as it relates to this case, is that "[s]ummary remedies, being in contravention of the common law, are generally held to be cumulative in the absence of language showing that they are intended to be exclusive." How T.C.A. § 22–4–108(f) can be in contravention of a common law right which never existed is something that escapes me.

In this case T.C.A. § 22–4–108(f) does establish a clear public policy against the discharge, demotion, or suspension of an employee for taking time off to serve on jury duty, evidenced by an unambiguous statutory provision setting out the employee's rights in the event of such action by his employer, and providing for sanctions against the employer for its violation.

For this Court to reach beyond its mandate is one more step toward blurring the line of demarcation establishing the initiatives of the separate branches of government.

I would affirm the Court of Appeals. Since the clear logic of this dissent has not persuaded the majority, I concur in part two of the lead opinion in reference to the procedure for awarding punitive damages.