**E. Frank TUGGLE, Plaintiff/Appellee,**

v.

**The RAYMOND CORPORATION, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section at Jackson.

Dec. 22, 1992.

Certiorari Denied by Supreme Court May 24, 1993.

James W. McDonnell, Jr., Thomas J. Walsh, Jr., Robert L. Crawford, McDonnell Boyd, Memphis, for defendant/appellant.

William M. Jeter, Glassman, Jeter, Edwards & Wade, P.C., Memphis, for plaintiff/appellee.

HIGHERS, Judge.

This is a products liability action arising out of an accident involving a forklift truck manufactured by the appellant, The Raymond Corporation ("Raymond"). The gravamen of the complaint by the appellee, Frank Tuggle ("Tuggle"), was alleged negligent design and strict liability. The jury returned a $65,000 verdict in favor of Tuggle. Raymond appeals and presents the following

issues for our review: (1) Did the trial court err in refusing to instruct the jury that Raymond's compliance with an Occupational Safety and Health Administration regulation concerning forklift design created a rebuttable presumption in its favor as prescribed by T.C.A. § 29–28–104 (Tenn.1980)? (2) Did the trial court err in excluding from evidence the National Safety Council's forklift design standards? (3) Did the trial court err in refusing to instruct the jury that causation cannot be established by choosing between equal probabilities?

Baxter–Travenol Laboratories ("Travenol") employed Tuggle as a forklift operator at its warehouse in Memphis. On October 5, 1983, the day of the accident, Tuggle arrived at work and began his job of moving pallets of medical supplies by forklift to the releasing area of Travenol's warehouse. From a stand-up position, Tuggle was operating a Raymond Model 31 forklift. Travenol required its employees to drive this particular forklift backwards, or, in the opposite direction of the forks, forcing the operator to turn or look over his shoulder. Upon approaching a T-intersection of two aisles, Tuggle was unable to stop the forklift, and it crashed into a wall, throwing him out of the operator's compartment and pinning him between the outside of the forklift and the wall. Tuggle sustained fractures to his right knee and left foot and both of his legs were in a cast for 6 to 7 weeks. Tuggle returned to work in May or June of 1984, but he was limited to working four hours per day. By the end of two months, he was forced to retire due to the excessive and continuous swelling in his leg.

Tuggle originally filed suit on January 12, 1984, and by amended complaint, he named Raymond as defendant against whom the case was ultimately tried. The amended complaint alleged, as pertinent on appeal, negligent design and strict liability. In its answer, Raymond denied these allegations and asserted the defenses of contributory negligence and assumption of the risk. The evidence at trial included the following facts and testimony pertinent to the disposition of appellant's issues.

Raymond manufactured the Raymond Model 31 standup forklift that Tuggle was operating at the time of the accident. The Raymond Model 31 ("Model 31") is a narrow aisle, standup, reach forklift used primarily in warehouses with narrow aisles for the purpose of stacking and retrieving goods. It is powered by a 2,000 pound battery and is capable of obtaining speeds of up to 6.25 miles per hour. The Model 31 is operated through hand-operated speed and directional controls which are positioned on a switchbox inside the operational compartment and is equipped with a hydraulic braking system which is triggered by a 12–inch hinge brake peddle located on the floor of the operator's compartment. The operator engages the brake by letting off the pedal and allowing it to rise approximately six inches; thereafter, the operator can release the brake by pressing it to the floor. The Model 31 is equipped with an emergency disconnect button, which will also stop the forklift.

Tuggle's expert testified that he found a defective design in the Model 31's electrical system, in the location of the emergency disconnect button and the operator's compartment. On appeal, we are concerned only with the evidence relating to the operator's compartment.

The operator's compartment of the Raymond Model 31 is square in shape, and open in the back. Tuggle contended that Raymond should have enclosed the operator's compartment to protect the operator and that its failure to do so rendered its product defective and unreasonably dangerous. Tuggle's expert witness testified that the compartment design is defective because there is no barrier to prevent the intrusion of objects from outside the forklift or to prevent the operator from being thrown out of the compartment during an accident. Tuggle's expert witness testified that a design with a barrier, such as a spring-loaded or latched door, would be a safer alternative and would have prevented Tuggle's injuries.

Raymond's expert witnesses testified that the forklift was designed with an open back to allow the operator to get on and off the forklift easily and quickly, contributing to operational efficiency and safety. Ray-

mond's expert testified that emergency situations, such as vehicle tip-over or loading dock accidents, could arise in which the operator would need to be able to step off the forklift quickly. Raymond's expert further testified that enclosing the compartment could create a trap, exposing the operator to a potentially severe injury. Raymond's expert further testified that a rear door could create "pinch points" thereby increasing the risk of injury.

At the close of the proof, the jury received the case under three theories: negligence, strict liability, and breach of implied warranty of merchantability. The jury returned a verdict for Tuggle in the amount of $65,000, upon which the trial court entered judgment on June 7, 1991.

We now turn to the issues.

Raymond contends that a critical issue at trial was whether its failure to enclose the operator's compartment rendered the forklift defective and unreasonably dangerous. Through an expert witness, Raymond introduced into evidence a Federal Occupational Safety and Health Administration ("OSHA") regulation [1] that recommends against operator enclosures because rapid and unobstructed ingress and egress is considered more desirable. The OSHA regulation incorporates a standard established by the American National Safety Institute ("ANSI") [2] for powered industrial trucks. Raymond offered the OSHA regulation into evidence as relevant to the state of the art in forklift design in 1980. *See* T.C.A. § 29-28-105(b) (Tenn.1980).

At the close of the proof, Raymond sought a jury instruction based on T.C.A. § 29-28-104 (Tenn.1980) [3], which affords a rebuttable presumption in favor of a manufacturer who complies with "any federal or state statute or administrative regulation" in existence at the time the product was manufactured. *Id.* The rebuttable presumption created is that the manufacturer's product is not in an "unreasonably dangerous condition in regard to matters covered by those standards." *Id.* Raymond's proposed jury instruction provided as follows:

### PROPOSED JURY INSTRUCTION NO. 15 OF DEFENDANT THE RAYMOND CORPORATION

#### STRICT LIABILITY—COMPLIANCE WITH GOVERNMENT STANDARDS

If you find that The Raymond Corporation complied with any federal or state statute or administrative regulation existing at the time the forklift was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, there is a presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by those standards. However, this presumption may be rebutted by proof offered

---

**1.** § 1910.178   Powered industrial trucks.

(a)(2) All new powered industrial trucks acquired and used by an employer after the effective date specified in paragraph (b) of § 1910.182 *shall meet the design and construction requirements* for powered industrial trucks *established in the "American National Standard for Powered Industrial Trucks, Part II, ANSI B56.1–1969"*, except for vehicles intended primarily for earth moving or over-the-road hauling. (emphasis added)

**2.** ANSI Standard—Safety Standard for Powered Industrial Trucks
424 OPERATOR PLATFORMS
(including removable)
   B.   End control Trucks
   Operator enclosures are not recommended because rapid and unobstructed ingress or egress for the operator is considered more desirable.
   On double-end control baggage-type trucks or trucks which may be transported on short

elevators, means should be provided to prevent unintentional folding of the operator's folding platform.
   C.   Reach and Narrow Aisle Trucks
   Additional operator enclosures may be provided in conjunction with the platform. If provided, they should permit each ingress and egress from the platform.

**3.** 29–28–104   (Tenn.1980).   Compliance with government standards—Rebuttable presumption.—Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacturing, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards.

by plaintiff that the standards prescribed by the administrative regulation created an unreasonably dangerous condition.

The court refused to submit Raymond's proposed jury instruction, holding that the language of T.C.A. § 29–28–104 required that the regulation prescribe standards for the manufacturer's conduct. The court said that the OSHA regulations are applicable to employers and not to manufacturers.

Raymond's position is that there is no "applicability requirement" under the plain language of the statute. Raymond argues that the language in the statute is that a manufacturer's compliance with "any" federal or state statute or administrative regulation gives rise to the presumption.

■■■ We disagree. We approve of the trial court's statement that the purpose of T.C.A. § 29–28–104 is "to give refuge to the manufacturer who is operating in good faith and [in] compliance of what the law requires him to do." We hold that the plain language of T.C.A. § 29–28–104 is that the presumption is limited to "matters covered by these standards." The OSHA regulations "cover" or are applicable to an employer's conduct, not a manufacturer's conduct.[4] *See Hurt v.*

*Coyne Cylinder Co.,* 956 F.2d 1319, 1322–24 (6th Cir.1992). *Cf. Minichello v. U.S. Industries, Inc.,* 756 F.2d 26, 28–30 (6th Cir.1985) (admission of manufacturer's compliance with OSHA standards to establish whether its product is unreasonably dangerous was improper and reversible error because the regulations pertain only to the employer's conduct); *Bailey v. V & O Press Co., Inc.,* 770 F.2d 601, 607–09 (6th Cir.1985); (District Court's refusal to admit a manufacturer's compliance with OSHA regulations as probative on the issue of strict liability was proper.)

There are no Tennessee decisions directly on point. When courts have allowed a rebuttable presumption pursuant to T.C.A. § 29–28–104, however, the standards with which the manufacturer complied were directly applicable to the manufacturer or the manufacturer's conduct. *Clarksville–Montgomery Co. School System v. U.S. Gypsum Co.,* 925 F.2d 993, 1004 (6th Cir.1991); *Goins v. Clorox Co.,* 926 F.2d 559, 561–62 (6th Cir.1991).

Raymond next asserts that the trial court erred in excluding from evidence proffered expert testimony concerning forklift design standards in a National Safety Council ("NSC") publication.[5] Raymond argued that

4. Congress' primary purpose for enacting the Occupational Safety and Health Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b) (1990). To further this primary goal, Congress imposed statutory duties on employers and employees. Under the Act, an employer's duty is two fold:

Each employer—
(a) shall furnish to each of his employees employment and in a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
(2) shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct promulgated under this chapter.

29 U.S.C. § 654(a). See *Teal v. E.I. DuPont De Nemours & Co.,* 728 F.2d 799 (6th Cir.1984).

The Act further provides that it is not intended to affect the civil standard of liability:

Nothing in this Act shall be construed to supersede or in any manner effect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employ-

ers and employees under any law with respect to injuries, diseases or death of employees arising out of, or in the course of, employment. 29 U.S.C. § 653(b)(4).

In *Minichello, infra,* the Sixth Circuit relied on 29 U.S.C. § 653(b)(4) and § 654(a) to hold that using OSHA regulations to establish that a product is unreasonably dangerous is improper. The Tennessee Supreme Court has held that proof of a violation of state or federal occupational safety and health statutes will constitute negligence per se, rather than mere evidence of negligence. *Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 35 (Tenn.1988). Unlike the case at bar, however, *Bellamy* involved an employer-employee situation directly covered by an OSHA regulation, and, the issue was negligence per se and contributory negligence not strict liability. Further, our holding is more properly based upon 29 U.S.C. § 654(a).

5. *Accident Prevention Manual for Industrial Operators.* Additional operator enclosures are not recommended because rapid and unobstructed ingress/egress for the operator is considered more desirable. However, should additional enclosures be provided in conjunction with the platform, they should not prevent easy ingress or egress from the platform.

the NSC publication reflected the state of scientific and technological knowledge in the industry in 1980, and was thus directly relevant to the issue of design safety in compliance with the state of the art. *See* T.C.A. § 29–28–105(b). The NSC standards are practically a verbatim rendition of the ANSI standards which were incorporated through the OSHA regulation previously introduced into evidence. *See supra* note 1 and 2. The trial court excluded the NSC manual because it was cumulative evidence. The court said that there was no evidence that the NSC publication was based on any scientific information or study independent of the ANSI study. The court said that the NSC publication was simply a repetition of proof already in the record.

The trial court's exclusion of the NSC manual was within his discretion. *See* Tenn.R.Evid. 403. Even if the trial court's exclusion of this evidence was an abuse of discretion, it would be harmless error because the substance of this evidence reached the jury through the admission of the ANSI and OSHA standards. *Pankow v. Mitchell,* 737 S.W.2d 293, 298 (Tenn.App.1987); *Beaver v. Hamby,* 587 F.Supp. 88 (M.D.Tenn. 1983).

Lastly, appellant asserts that the trial court erred in refusing to instruct the jury that causation cannot be established by choosing between equal probabilities because the evidence at trial sharply conflicted as to the cause of Tuggle's accident. Raymond is referring in part to its allegations of contributory negligence and assumption of the risk and Tuggle's testimony that he drove into the wall without attempting to turn. The appellant's requested jury instruction is as follows:

### CAUSATION—EQUAL PROBABILITIES

Where it appears with equal probability that Frank Tuggle's injuries may have resulted from either of at least two causes, for only one of which Raymond was responsible, and the other for which Raymond was not responsible, any choice between them would be a matter of speculation and conjecture and impermissible as a basis for a verdict in favor of the plaintiff.

The trial court apparently refused this instruction because its general charge to the jury as to the appellee's burden of proof encompassed the substance and principal of appellant's proposed jury instruction.

In his general charge, the trial court instructed the jury that Tuggle had the burden of establishing, by preponderance of evidence, the elements of negligence, breach of implied warranty and merchantability and strict liability, and that such condition was the proximate cause of Tuggle's injuries. The trial court went on to define the term "preponderance of the evidence" by stating to the jury that:

'Preponderance of the evidence' means that amount of factual information presented to you in this trial which is sufficient to cause you to believe that the allegation is probably true.... If the evidence on a particular issue appears to be equally balanced, the party having the burden of proving the issue must fail.

It is the duty of the trial judge to instruct the jury accurately with respect to the theories of the parties and the legal principles applicable thereto. *Street v. Calvert,* 541 S.W.2d 576, 584 (Tenn.1976). The trial judge is not required to give a specially requested instruction when his charge, considered as a whole, includes the principle and substance of the tendered charge. *McAmis v. Carlisle,* 42 Tenn.App. 195, 208–11, 300 S.W.2d 59, 66–67 (1956).

We find no error with the trial court's refusal to submit appellant's request to jury instruction.

We affirm. Costs are assessed to the appellant.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.