IN THE COURT OF APPEALS OF TENNESSEE
EASTERN SECTION AT KNOXVILLE

--------------------------------------------------------------

FILED

August 16, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

TINA M. PACK,                                )
                                             )
        Plaintiff/Appellant                  )    BLOUNT CIRCUIT
                                             )
v.                                           )    No.  03A01-9604-CV-00136
                                             )
                                             )
T.T. ENTERPRISES, INC. d/b/a                 )
GARY YEOMANS FORD, INC. and                  )
GARY YEOMANS FORD/LINCOLN/                    )
MERCURY,                                     )
                                             )    REVERSED AND REMANDED
        Defendant/Appellee                   )


David A. Burkhalter, II, Knoxville, For the Appellant

Perry P. Paine, Jr., Maryville, For the Appellee


**O P I N I O N**

INMAN, Senior Judge


        The plaintiff challenges the granting of a directed verdict against her in this case.  We find that this was not a proper case for the granting of a directed verdict and therefore reverse and remand the case for a new trial.

        The complaint alleges that the defendant discharged plaintiff in retaliation for her serving on a jury, a violation of the common and statutory law of Tennessee. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992); TENN. CODE ANN. §§ 22-4-108, *et seq.*

        On March 26, 1992,  the plaintiff received a summons ordering her to appear for jury duty on April 20, 1992.  She testified that, on March 27, 1992, the following day, she told her supervisor that she had been summoned for jury duty and held out the summons toward him.  She testified that Jim Rodgers, the supervisor, told her he did not have time for "this" and did not look at the summons.

The plaintiff testified that she next discussed her jury duty with her supervisor as she was clocking in on Friday, April 17, 1992, when her supervisor inquired about it. She testified that she had told him about the jury duty previously, which he denied. She testified that he told her that it was "the craziest thing I ever heard of . . . If I had known it you wouldn't have served on the damn thing." That afternoon as she was leaving, she testified that he told her that he would see her on Monday, and she reminded him that she had jury duty.

Plaintiff served on a jury during the entirety of her usual working day on both Monday, April 20, 1992 and Tuesday, April 21, 1992. On Wednesday morning, April 22, 1992, the plaintiff had phone conversations with Ms. Mikles and then with Mr. Rodgers, during which she was informed that she needed to provide the defendant with a statement from the court showing the exact hours that she worked and with her jury money. She testified that Mr. Rodgers told her she would have to provide the statement before she "came back out."

The plaintiff testified that she called the clerk's office and the judge's secretary but was unable to obtain a statement of her exact hours; she then talked with Judge Thomas and explained that she needed a statement of her hours and her jury money. He told her to have the defendant contact him. She testified that she told her employer that he could call Judge Thomas and the judge would handle it. She further testified that Mr. Rodgers reiterated that she was not to return before providing a statement of her exact hours.

Judge Thomas testified that he had a conversation with Ms. Pack while she was serving as a juror in which she expressed concerns about either being paid for her work while on jury duty or being excused to serve at all. He testified that he gave her a copy of the statute dealing with employers and jury service and told her to have her employer call if there was a problem. He further testified that a letter showing the plaintiff's exact hours could have been provided but, since exact hours that jurors served was not recorded in 1992, it would have taken some time.

The plaintiff's husband, Jim Pack, testified that he went to talk with Mr. Rodgers the next day, Thursday, April 23, 1992, at about 8:00 or 8:30 a.m. He testified that Mr. Rodgers told him, "Well, before you say anything, let me tell you we had to let her go." Mr. Pack testified that he knew she had been absent from work recently due to surgery and now "this." He testified that Mr. Rodgers replied, "I don't have no problem with people being out for medical reasons."

As part of her proof, the plaintiff submitted a statement from the defendant, signed by Mr. Rodgers, that was provided to the unemployment office. We reproduce this statement *verbatim*:

> Tina Pack came to me with Jury Duty notice 4/17/92 as she was clocking out at 4:00 p.m. I asked her why she did not tell me two weeks ago when she got it. She stated she did, again I told her she did not, but because of all the confusion I stated O.K. see you Monday.
>
> On the following Wed. 4/22/92 I asked Rosalie Mikles to call Tina for the days and time she had jury duty, about 30 minutes later Tina called back and asked why I needed this information. I told her I had to process payroll and needed a statement for what days and hours she was to be paid. She went "off", mad, raving, and crying said it was another way to screw her and hung up.
>
> That afternoon she called back and said if I wanted to know when she was in court to call Kelly Thomas's office. I did not feel this was my job to inquire as to her jury duty days or hours. If she wanted to be paid it would be necessary for her to tell us dates and times, she hung up.
>
> Thursday Morning 4/23/92, Jim Pack came in my office and informed me he did not appreciate me upsetting his wife and he told her not to tell me, that I would try to have her exempted from jury duty. At that point I told Jim he had cost Tina her job, because she did not comply with company rules and I was left in a bad position and over loaded the work schedule.
>
> Ms. Mikles is only the switchboard operator and time keeper, she is not Tina's supervisor. This is a unfortunate situation which could have been avoided if Tina would have complyed[sic] with company rules or even had offered to comply to my request for days and hours so I could simply pay her.

Plaintiff denied going "off" at her supervisor or stating that this was another way to screw her when she first talked to Mr. Rodgers about the statement of her exact hours. Mr. Pack denied telling Mr. Rodgers that he had told plaintiff not to

inform Mr. Rodgers about her jury duty. Both the plaintiff and her husband denied that plaintiff's husband had ever told her not to tell Mr. Rodgers about her jury duty.

Plaintiff also submitted the separation notice provided her by defendant, to which defendant stipulated. The separation notice, signed by Mr. Rodgers, states that the plaintiff was fired for failing to comply with the rules set out in the employee handbook. It also indicates that the separation notice was completed and released to Ms. Pack on April 22, 1992.

In reviewing a directed verdict, we must take the strongest legitimate view of the evidence in favor of the party against whom the verdict was directed, discard all countervailing evidence and reverse where there is any doubt as to whether a reasonable mind could conclude otherwise. *Crosslin v. Alsap*, 594 S.W.2d 379, 380 (Tenn. 1980).

The plaintiff must establish the following elements to prove wrongful retaliatory discharge: (1) she was an employee of the defendant when she served on the jury; (2) she served on a jury; (3) the defendant terminated her employment and (4) her jury service was a substantial factor in the defendant's motivation to fire her. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993) (paraphrasing the elements listed for proving retaliatory discharge for filing a workers' compensation claim).

The burden of proof rests upon the plaintiff to prove these elements, including the causal relationship between the jury service and the firing. Proof of such a causal relationship puts the burden on the employer to show a legitimate, non-pretextual reason for the firing. *Anderson*, 857 S.W.2d at 558-559.

To recover under TENN. CODE ANN. § 22-4-108, the plaintiff must also show that she exhibited the summons to her immediate supervisor on the next day she worked after receiving the summons.

Here, taking the strongest legitimate view of the evidence in favor of the plaintiff, the circumstances surrounding the plaintiff's discharge raise a causal

relationship between her discharge and the jury service. The plaintiff's discharge took place during the time she was serving as a juror. The plaintiff and her husband testified to statements of plaintiff's supervisor suggesting that he disapproved of plaintiff's absence from work for jury service. Further, there is evidence that the defendant fired the plaintiff before the conversation which allegedly informed Mr. Rodgers that plaintiff had violated company policy by not giving him timely notice of her summons.

The plaintiff's proof also presents the defendant's purported rationale for firing her, that she failed to comply with the rules in the employee handbook. The handbook states, "If you receive a call to jury duty, take it immediately to your manager so he may plan the department's work with as little problem as possible."

Defendant argues that plaintiff was fired because she lied to her supervisor when she said that she had told him about her serving jury duty before Friday, April 17, 1992. Defendant bases this argument on the statement of Mr. Rodgers submitted by the plaintiff as part of its proof, by which the defendant argues the plaintiff is "bound." We are uncertain as to why the defendant believes the plaintiff is more bound by Mr. Rodgers' statements than she is by her other proof-in-chief. This conflict in the evidence only demonstrates that this is not a proper case for a directed verdict. Questions of fact must be submitted to the jury.

Alternatively, defendant argues that the notice she provided was inadequate because she did not inform defendant of the actual dates of her jury service. However, the plaintiff testified that she did exhibit the summons to her employer on the day after she received it, which is all the statute and the company handbook require. Looking at the evidence in the light most favorable to the plaintiff, she complied with the rules set out in the company handbook. Therefore, a reasonable mind could find that the employer has not raised a legitimate, non-pretextual reason for her discharge.

The judgment of the trial court is reversed at the costs of the appellee, and the case is remanded to the trial court for a new trial.

_____
William H. Inman, Senior Judge

Concur:


_____
Don T. McMurray, Judge


_____
Herschel P. Franks, Judge