Jerry **HUGHES** and Nancy Hughes, Plaintiffs–Appellants,

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, INC.,** Intervening Plaintiff,

v.

**Bridgestone/Firestone, Inc.,** Defendant–Appellee.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

March 10, 1999.

Permission to Appeal Denied by Supreme Court Sept. 13, 1999.

William C. Cremins, Knoxville, and Randy W. James, Aaron N. Woods and Lisa C. Beckley, Risjord & James, P.C., Overland Park, Kansas, for Plaintiffs-Appellants.

Ernest A. Petroff and Kelli L. Thompson, Baker, Donelson, Bearman & Caldwell, Knoxville, and Thomas R. Woodrow and Robert W. Vyverberg, Burke, Weaver & Prell, Chicago, IL, for Defendant-Appellee.

*OPINION*

FRANKS, Justice.

In this products liability action, the jury returned a verdict for the defendant which the Trial Judge approved, and plaintiffs have appealed.

Plaintiffs brought this action against defendant alleging negligence and strict liability in the manufacture of a multi-piece truck rim assembly, known as the FL2, and sought both compensatory and punitive damages.

Jerry Hughes was injured on July 28, 1995, by the explosive separation of an FL2 rim assembly. An FL2 rim is a multi-piece rim assembly manufactured by Firestone. It is used with tubed tires on large trucks. It has a permanent flange on one side of the wheel for the tire to rest against, and a removable flange, or ring, on the other side. The removable ring enables the tube and tire to be placed on the wheel, and the ring has a small gap so that it can expand to snap onto the wheel. Once the tube and tire are on the wheel, the removable ring is then placed on the wheel and clamps into a ¼ inch groove or gutter on the wheel.

The Occupational Safety and Health Administration has promulgated rules of procedure for servicing this type of rim and single-piece rims, which are used with tubeless tires. The regulations are the result of a request for such procedures by the rim manufacturers, including Firestone. Part of this procedure involves inflating the tires in an inflation cage, and staying out of the trajectory of the wheel to the extent possible.

At the time Jerry Hughes was injured, he was employed by Tennessee Waste Movers in Loudon County, Tennessee, which is owned by Harry Gillman. He was taught how to assemble the multi-piece rims by the owner and another mechanic, Frank Jenkins. He testified that he regularly and consistently followed those procedures.

On the day of the accident, he took a tire off a truck to repair, and replaced the tire, tube, and ring, then rolled the assembly to the safety cage and inflated it. Once he inflated it to 80 PSI, he rolled it out of the safety cage and over to the truck. He mounted the tire to the axle and began tightening the lug nuts. The wheel assembly then explosively separated, hitting Hughes in the head and seriously injuring him. Though he testified that he was not certain whether he followed all safety procedures, it is plaintiffs' theory that all

proper procedures were followed and the explosion was caused by a design defect.

Plaintiffs claim that the FL2 rim is defective because it has a proclivity to explosively separate, and that it has no redundant or backup system to positively lock the multiple components together to prevent separation under inflation pressure, and that the ring will not always snap fully into the gutter and the servicemen will not be able to discern the ring is not in place. If the ring is substantially, but not completely, engaged, it can be inflated to high pressure and come off later. This theory was advanced through the testimony of plaintiffs' expert, a Dr. Alan Milner.

Plaintiffs offered evidence that Firestone knew of the proclivity of the FL2 to explosively separate, yet continued to manufacture the rim when there was a safer alternative. The alternative is the 15° drop center single-piece rim, which is used with tubeless tires. It does not have a removable ring that can come off and injure the servicemen. Documents were offered demonstrating that Firestone actively promoted the single-piece rim as a safer alternative to the multi-piece.

Plaintiffs' argue that the procedures advocated by Firestone and OSHA in servicing these multi-piece rims do not adequately protect servicemen from danger, and they do not adequately warn of the danger.

The defendant presented evidence through its expert, Dennis Whalen, that plaintiff was injured because he misassembled the rim. Whalen testified that once a serviceable side ring is fully assembled into the gutter, a condition that can be seen and heard, the side ring will "hug" the rim base. When the tire is pressurized, the air locks all components together for full circumference and the ring cannot come out of the gutter until the pressure is released and a tool is used to remove the ring. But, if the side ring is not fully seated, which can be seen, the ring may separate during or after inflation. It was Whalen's opinion that plaintiff was injured because he misassembled the parts. He testified that there were two impact marks on the rims which he suspected were caused by plaintiff striking it with something, which would be an improper procedure. Another witness testified that a hammer was nearby, creating an inference that Hughes struck the rim with a hammer to seat the ring.

The defendant offered evidence that the rim industry, including Firestone, has advocated and adhered to long-standing truck tire and rim servicing safety rules and procedures. They had petitioned OSHA for an industry wide standard in truck rim servicing. Firestone itself helped draft the safety procedures and it had designed a wall chart to be disseminated to employers.

The defendant's proof indicated that while the single-piece rim can be used interchangeably with the multi-piece rim, it is not the answer to all the hazards of truck tires. The single-piece rim still presents dangers in servicing because it is a pressure vessel and is under very high pressure.

■ Plaintiff raises several issues on appeal with numerous sub-issues. We conclude that the dispositive issue on appeal is whether part of the charge by the Trial Judge, as requested by the defendant, relative to Tennessee Code Annotated § 29–28–104, is reversible error.

Tenn.Code Ann. § 29–28–104 (1980) provides as follows:

**Compliance with government standards—Rebuttable presumption.—** Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in re-

gard to matters covered by these standards.

The defendant requested the following instruction based on this statute:

> In determining whether the FL rim design in this case was in a defective condition or unreasonably dangerous to plaintiffs, you may consider Bridgestone/Firestone, Inc.'s compliance with any federal or state statutes or administrative regulations prescribing the standards for design, inspection, testing, manufacturing, labeling, warning or instructions for use of a product existing at the time the FL rim design in this case was manufactured. If you find that Bridgestone/Firestone, Inc. did in fact comply with such regulations and/or statutes, you must presume that the FL rim design is not unreasonably dangerous or in a defective condition and it is then the plaintiffs' burden of rebutting that presumption by a preponderance of the evidence.

After setting forth the standards of liability for negligence and strict liability, the trial court gave the following instruction:

> You have heard testimony referencing the OSHA regulations for servicing the FL wheels. The Court allowed testimony about these regulations. However, you are instructed that compliance with these safety standards does not mean the FL wheels were not defective nor does a failure to comply mean that it was defective. Testimony about the regulations is merely evidence of a minimum standard established by the federal government. In Tennessee the legislature has passed certain laws which are published in Tennessee Code Annotated. One such law is T.C.A. 29–28–104, Compliance with Government Standards, Rebuttable Presumption. The law reads as follows: "Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning, or instructions for use of a product shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards." That's the end of the statute. *Thus compliance with OSHA regulations creates a presumption that the FL wheel was not unreasonably dangerous as to those standards only, which presumption may be overcome by competent evidence.*

(emphasis added).

Congress created the Occupational Safety and Health Act to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b) (1994). To further this goal, Congress imposed statutory duties on employers and employees. The statute provides:

> (a) Each employer—
> (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
> (2) shall comply with occupational safety and health standards promulgated under this chapter.
> (b) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.

29 U.S.C. § 654 (1994).

The statute further provides, "Nothing in this chapter shall be construed to supersede or in any manner effect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4) (1994).

The OSHA regulations at issue in this case are contained in 29 C.F.R. § 1910.177 (1998). Under the heading "Scope," the regulations state, "This section applies to the servicing of multi-piece and single piece rim wheels used on large vehicles such as trucks, tractors, trailers, buses and off-road machines." 29 C.F.R. § 1910.177(a)(1). "Service" is defined as "the mounting and demounting of rim wheels, and related activities such as inflating, deflating, installing, removing, and handling." 29 C.F.R. § 1910.177(b). The phrase "the employer shall" is repeated throughout the regulations. The only mention of a manufacturer is in the definition of "rim manual," which is defined as "a publication containing instructions from the manufacturer or other qualified organization for correct mounting, demounting, maintenance, and safety precautions peculiar to the type of wheel being serviced." 29 C.F.R.1910.177(b).

We conclude that based on the purpose of the OSHA regulations and the language of the Tennessee statute, that the Court's instruction on the rebuttable presumption was erroneously given. This precise issue was addressed in the case of *Tuggle v. Raymond Corp.*, 868 S.W.2d 621 (Tenn.Ct.App.1992). In *Tuggle,* the plaintiff was injured when the forklift he was operating crashed into a wall, throwing him out of the operator's compartment and pinning him between the forklift and the wall. The plaintiff sued the manufacturer of the forklift, contending that it was defective because there was no barrier to prevent the intrusion of objects into the operator's compartment or to prevent the operator from being thrown out of the compartment. The manufacturer introduced evidence of an OSHA regulation that recommends against operator enclosures, because rapid and unobstructed ingress and egress is considered more desirable. The evidence was offered as relevant to the state of the art in forklift design at the time of manufacture. The manufacturer requested an instruction on the rebuttable presumption in

Tenn.Code Ann. § 29–28–104, which the Trial Court refused. This Court upheld that decision, stating

> We approve of the trial court's statement that the purpose of T.C.A. § 29–28–104 is "to give refuge to the manufacturer who is operating in good faith and [in] compliance of what the law requires him to do." We hold that the plain language of T.C.A. § 29–28–104 is that the presumption is limited to "matters covered by these standards." The OSHA regulations "cover" or are applicable to an employer's conduct, not a manufacturer's conduct.

*Id.* at 625. *Also see Minichello v. U.S. Industries, Inc.,* 756 F.2d 26, 29 (6th Cir. 1985) (stating OSHA regulations apply only to employer's conduct).

Examining the language of the statute reveals that this interpretation is correct. The statute states that "*Compliance* by a manufacturer ... with any federal or state statute or administrative regulation ... shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition *in regard to matters covered by these standards.*" Tenn.Code Ann. § 29–28–104 (1980) (emphasis added). The OSHA standards cover an employer's conduct, not a manufacturer's conduct. *See* 29 U.S.C. §§ 651–654; 29 C.F.R. § 1910.177. A manufacturer cannot comply with standards that do not apply to the manufacturer's conduct. Thus the rebuttable presumption is not applicable in this case.

■ The defendant attempts to counter this clear language in the statute and in *Tuggle* with the argument that the OSHA system contemplates action by the rim manufacturers in supplying the required rim manuals and safety information, making the OSHA regulations apply to rim manufacturers. The defendant is correct that the OSHA system contemplates cooperation by rim manufacturers in distributing warnings. The "rim manuals" mentioned in the regulation are to come from

either the rim manufacturer or another qualified organization. *See* 29 C.F.R. § 1910.177(b). OSHA needs the cooperation of the rim manufacturers to develop and disseminate warning information. However, once OSHA receives the information and the information is disseminated to employers, the regulations affect employer's conduct, not the manufacturer's conduct. The OSHA system may contemplate assistance by the manufacturer, but nothing in the regulation requires the manufacturer to do anything. Accordingly, assistance to OSHA in disseminating warning information is relevant to the defendant's efforts to warn about its product, but it does not render OSHA regulations applicable to its conduct.

■ Defendant also argues that this presumption applies because the plaintiffs alleged in their Complaint that the defendant violated its duties under OSHA. In their Complaint, the plaintiffs allege that the defendant was liable for "negligently, carelessly, and wantonly ignoring and failing to reasonably respond to the findings, conclusions, recommendations and/or regulations of the United States Department of Labor Occupational Safety and health Administration, the U.S. Tire and Rim Association, and the Insurance institute for Highway Safety." By making this allegation, the plaintiffs did make the OSHA regulations relevant to the defendant's conduct, but they did not charge that the defendant breached duties it had under the OSHA regulations. They alleged that the defendant negligently failed to respond to OSHA. Moreover, they challenged the proposed jury instruction for the precise reasons it is invalid.

■ The issue thus becomes whether the charging of this erroneous instruction is reversible error. *See* Rule 36(b), T.R.A.P. In this regard, the jury instruction must be considered as a whole, and will be upheld so long as it doesn't mislead the jury. The court will assume that the jury followed the instructions. *Smith v.*

*Detroit Marine Engineering Corp.,* 712 S.W.2d 472, 475 (Tenn.Ct.App.1985).

Two cases are instructive on this issue. In *Smith v. Detroit Marine Engineering Corp.,* the Court found reversible error because the trial court instructed the jury that it must find a product to be both defective *and* unreasonably dangerous for liability to attach. Using the word "and" instead of "or" increased the plaintiff's burden, which required reversal. *Id.* at 475. In *Gorman v. Earhart,* 876 S.W.2d 832 (Tenn.1994), the plaintiff's decedent was killed when her vehicle struck the defendant's John Deere crawler/loader, which is used to load logs onto trucks. The crawler was crossing the highway when it was struck, and the jury was instructed that the Manual of Uniform Traffic Control Devices was applicable, which requires a flagger to be located far enough in advance of a work site to give approaching traffic time enough to reduce speed and stop. The Supreme Court held that the manual only applied to public authorities, not private persons, and was inapplicable to the case. The jury verdict was reversed because the instruction relative to the manual went to the heart of the case and more likely influenced the jury's decision. *Id.* at 836–837.

As in the foregoing cases, the instruction here went to the heart of the case by increasing the plaintiffs' burden of proof on the issue of liability, by directly suggesting that the OSHA regulations applied to defendant. While the defendant makes the argument that the terms of the statute limit the presumption to warnings and instructions for use because it limits the presumption to "matters covered by these standards," the Court did not define the term "matters covered by these standards" or otherwise limit the statute's application. Based on this record and the jury instructions as a whole, the instruction more probably than not affected the judgment of the jury. Accordingly, the judgment is reversed and the case will be remanded for a new trial.

■ Plaintiffs argue that the defendants should be sanctioned for requesting the foregoing instruction, pursuant to T.R.C.P. 11. We find this issue to be without merit.

■ Plaintiffs raise as error the Trial Judge's refusal to instruct the jury regarding the consumer expectation test.

■ Tennessee products liability law is codified in T.C.A. § 29–28–101 *et seq.* (1980). The term "unreasonably dangerous" means

a product that is dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition. T.C.A. § 29–28–102(8).

The Tennessee Supreme Court, in *Ray v. BIC Corp.,* 925 S.W.2d 527 (Tenn.1996), determined that the definition provides two distinct tests for determining whether a product is unreasonably dangerous: the consumer expectation test and the prudent manufacturer test. *Id.* at 531.

■ The Supreme Court in that case observed, as to this test, that the consumer is required to establish what an ordinary consumer purchasing the product would expect, and is applicable to products about which the ordinary consumer would have knowledge, and is to be applied: "only to those products in which 'every day experience of the product's users permits a conclusion....' " *Citing Soule v. General Motors, Corp.,* 8 Cal.4th 548, 34 Cal. Rptr.2d 607, 617, 882 P.2d 298, 308 (1994).

■ The defendant insists that this test is limited to what it describes as "ordinary consumer products". In the statute, the word "ordinary" modifies consumer

not the product, and applies to the customary or usual consumer of the product. The "every day experience" of the users of a product would give them expectations about the product. Tennessee cases have held the consumer expectations test applicable to a wide variety of products. *See e.g., Whaley v. Rheem Mfg. Co.,* 900 S.W.2d 296 (Tenn.App.1995), (the product a heat pump); *Goode v. Tamko Asphalt Products, Inc.,* 783 S.W.2d 184 (Tenn. 1989), (the test applied to asphalt roof shingles); *Gann v. Int'l Harvester Co.,* 712 S.W.2d 100 (Tenn.1986), the test applied to an International Harvester Crawler Tractor. *Also see Neal v. Boggs,* 1997 WL 563221, *2 (Tenn.App.1997), *quoting Kellar v. Inductotherm Corp.,* 498 F.Supp. 172, 176 (E.D.Tenn.1978), (test applicable to the J.I. Case uni-loader).

■ The Trial Court is required to instruct the jury on every theory of the case that is raised by the pleadings and supported by the evidence. *Owen v. Arcata Graphics/Kingsport Press,* 813 S.W.2d 442, 447 (Tenn.Ct.App.1990); *Spellmeyer v. Tenn. Farmers. Mut. Ins. Co.,* 879 S.W.2d 843, 846 (Tenn.Ct.App.1993). Here the plaintiffs offered evidence of the expectations of the users of the multi-piece rims at Tennessee Waste Movers, and evidence that these users did not expect the rims to explode if they remained intact after inflation in the safety cage. The evidence demonstrates that the individuals who service and mount these tires were aware of the characteristics of these rim assemblies and their expected performance. As the *BIC* Court notes to be entitled to the charge, the consumer [1] is required "to establish what an ordinary consumer purchasing the product would expect", p. 531. Accordingly, we conclude the Trial Judge should have given the requested charge on the consumer expectation test.

---

1. Consumer is defined as a person who buys or uses goods and services. *Oxford American* *Dictionary,* Avon.

Plaintiffs insist that the Trial Court erred in directing a verdict in Firestone's favor on plaintiffs' punitive damage claim.

In reviewing a motion for directed verdict, "the trial court must take the strongest legitimate view of the evidence in favor of the non-moving party, allowing all reasonable inferences in favor of that party, and disregarding all countervailing evidence." *Wasielewski v. K Mart Corp.*, 891 S.W.2d 916, 919 (Tenn.App. 1994). A directed verdict should only be granted in cases "where a reasonable mind could draw but one conclusion". *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn.1977). When considering a motion for directed verdict on punitive damages, a trial court must limit consideration of the evidence in light of this standard, but it must also find the evidence to be clear and convincing. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992); *Wasielewski*, at 919.

When punitive damages are sought, the court shall bifurcate the trial upon motion of the defendant. "During the first phase, the fact finder shall determine (1) liability for, and the amount of, compensatory damages, and (2) liability for punitive damages in accordance with the standards ... If the fact finder finds a defendant liable for punitive damages, the amount of such damages shall then be determined in an immediate, separate proceeding." *Hodges*, 901. Plaintiffs argue that the directed verdict was inappropriate because they had not yet rested on punitive damages liability, but Tennessee law is clear that in a bifurcated proceeding, compensatory damages and liability for punitive damages are determined during the first phase of trial, and the amount of punitive damages is determined in the second phase. The issue of punitive damage liability was subject to defendants' motion when plaintiff rested.

However, taking the evidence in a light most favorable to the plaintiffs, reasonable minds could differ as to whether the plaintiffs offered by clear and convincing evidence that the defendant acted in a reckless or fraudulent manner in continuing to manufacture the FL rim. The plaintiffs proof was that multi-piece rims are dangerous, and that the defendant has known of these dangers for decades, yet continued to manufacture this product. The plaintiffs produced documents showing that the defendant promoted its single-piece rim and tubeless tire as a safer alternative to the multi-piece rim and tubed tire. A document was introduced which comments that the OSHA standard could be a "tool the industry could use in battling the ever-increasing number of product liability cases," which the plaintiffs interpret as revealing that Firestone wanted the OSHA standard to fight liability instead of to promote safety. While this interpretation on the latter point is tenuous, reasonable minds could differ on whether all of the evidence meets the standard on the issue of punitive damages. We conclude the issue of punitive damages should have been presented to the triers to fact for determination.

The plaintiffs have raised several issues as to other portions of the charge and requested charges, and as to the admissibility of evidence. We have reviewed these additional issues and conclude they are without merit.

We reverse the judgment of the Trial Court and remand for a new trial and assess the cost to the appellee.

GODDARD, P.J., concurs with separate opinion.

SUSANO, J., concurs.

GODDARD, Presiding Judge, concurring in part and dissenting in part.

I concur in the majority opinion as to all of the issues raised same the one addressing punitive damages.

Upon viewing the proof in a light most favorable to the Plaintiffs and indulging all reasonable inferences in their favor, I cannot find—at the time the motion for a

directed verdict as to punitive damages was made and sustained—this to be "the most egregious of cases" or that any intentional, fraudulent, malicious or reckless conduct by the Defendant has been shown by clear and convincing evidence. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn. 1992).