IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 9, 2002

## JOE HIBBLER, III v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-10318, P-13805, P-16922     John P. Colton, Jr., Judge**

———————————————

**No. W2001-00449-CCA-R3-PC - Filed July 16, 2002**

———————————————

The petitioner, Joe Hibbler, III's petition for post-conviction relief was denied by the Shelby County Criminal Court following an evidentiary hearing. Because the record supports the lower court's determination that the petitioner did not demonstrate the ineffective assistance of counsel by clear and convincing evidence, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Robert B. Gaia, Memphis, Tennessee, for the Appellant, Joe Hibbler, III.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Thomas Hoover, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The petitioner, Joe Hibbler III, is seeking post-conviction relief from his October 5, 1989 first-degree murder conviction. His conviction was affirmed on direct appeal in 1991. *State v. Eric Maurice Lofton*, No. 135, slip op. at 12 (Tenn. Crim. App., Jackson, Jan. 23, 1991).[1] On October 17, 1996 this court held that the petitioner had been denied his constitutional right to file an application for permission to appeal to the Tennessee Supreme Court; thus, the court vacated and reentered its 1991 judgment to afford the petitioner this opportunity. *State v. Joe Hibbler, III*, No. 02C01-9503-CR-00081, slip op. at 1 (Tenn. Crim. App., Jackson, Oct. 17, 1996). On April 14, 1997, the petitioner's request for permission to appeal to the Tennessee Supreme Court was denied. The petitioner subsequently filed a 1997 petition for post-conviction relief alleging ineffective

---

[1]This case involved three defendants: Eric Maurice Lofton, Nicholas Santee Sanders, and the petitioner.

assistance of counsel and various other violations of state and federal law. On August 11, 2000, an evidentiary hearing was held. On January 29, 2001, the post-conviction court found that trial counsel's performance was not deficient and entered an order denying post-conviction relief. The sole issue the petitioner is currently presenting to this court is whether ineffective assistance of counsel at the trial court level violated his Sixth and Fourteenth Amendment rights under the United States Constitution. He alleges that his counsel at trial was ineffective because he failed to cross-examine the state's key witness, Billy Hightower.[2] We disagree.

On October 5, 1989, Joe Hibbler, III, Eric Maurice Lofton, and Nicholas Santee Sanders were each convicted of first-degree murder for the shooting death of Randy Chillies. The shooting occurred in a wooded area behind Raineshaven Elementary School in Shelby County. Although the state introduced witnesses who testified that there had been some friction between Chillies and the petitioner, as well as evidence linking the three defendants to the crime,[3] the state's primary witness was Billy Hightower, Jr. Hightower claimed that he was an eyewitness to the murder.

Hightower was an acquaintance of co-defendant Sanders. At trial Hightower testified that on the evening of November 2, 1988, he, Sanders, Lofton, and the petitioner went to Chillies' house to pick him up as they had planned earlier in the day. Earlier in the day, at an establishment called Big Daddy's, Hightower had heard Lofton, Sanders, and the petitioner discussing a club called "The Lunatics." He heard them say that "you had to do something to be a Lunatic." *Eric Maurice Lofton*, slip op. at 3. However, Hightower stated that he did not understand the discussion. Hightower was aware that Sanders was carrying a handgun that night, because before Chillies got in the vehicle, he saw Sanders give the gun to Lofton, who put it behind his back.

The vehicle in which the five young men were riding was stolen. Sanders announced that something was wrong with the vehicle. To Hightower's knowledge, nothing was actually wrong with the car. Nonetheless, Sanders proceeded to Raineshaven School, where he drove over a curb and down a small hill behind the school to a dark wooded area away from any streets or homes. Everyone got out of the car. Sanders went to the front and opened the car hood. The others went to the back where Chillies managed to open the locked trunk. Hightower stated that after the trunk was opened, Chillies reached inside. Lofton instructed Hightower to back away, and then Lofton shot Chillies in the back. Lofton then handed the gun to the petitioner who shot Chillies in the head from close range. The petitioner knocked the victim out of the trunk, and Sanders and the petitioner carried the victim's body into some bushes, covering the body with leaves that were in the trunk of the car. Sanders then threatened Hightower, stating that if he "snitched," he would "end up just like Randy." At trial, neither the petitioner nor his co-defendants cross-examined Hightower.

_____

[2]At the post-conviction evidentiary hearing, the petitioner argued that his appellate counsel was also ineffective.; however, he has not raised this issue on appeal. Thus, we will not address it.

[3]The physical evidence introduced at trial included blood, brain matter, and bone fragments of the victim found in the stolen car that the petitioner and his co-defendants were driving the night of the murder.

The petitioner and Lofton testified at trial in their own defense. Their testimony contrasted sharply from the testimony given by Hightower. They testified that Hightower was the person who pulled the trigger and that his actions were unexpected. They also claimed that after Hightower shot Chillies, they panicked and left Hightower at the scene of the crime. The jury rejected the defense account of events and returned a verdict of guilty against Sanders, Lofton, and the petitioner for first-degree murder.

At the post-conviction evidentiary hearing, the petitioner testified that his trial counsel did not cross-examine Hightower, who was the state's key witness. The petitioner testified that he believed that if his attorney had questioned Hightower about statements that he made at trial that were inconsistent with statements he made at an earlier transfer hearing in juvenile court,[4] the jury may have had a reasonable doubt as to his guilt or at least convicted him of a lesser offense. The petitioner also testified that with the exception of pretrial court appearances trial counsel only met with him once prior to trial and that trial counsel never discussed the role that Hightower might play in the trial.

Trial counsel testified at the post-conviction hearing that he decided not to cross-examine Hightower because Hightower "left out quite a bit of damning information, which we knew he had stated in Juvenile Court." Trial counsel testified that although Hightower had testified that the petitioner, Sanders, and Lofton had planned the killing of Randy Chillies, he had left out many of the specifics that he had included in his testimony at the juvenile court transfer proceeding, including a statement that the petitioner and his co-defendants "flipped a coin to determine the order they were going to shoot him." Trial counsel also testified that prior to trial he had conferred with the petitioner twice in jail for approximately thirty minutes and that he had lengthy discussions with his client lasting about an hour on each of the four pretrial court dates. During these meetings, trial counsel said that he discussed everything related to the case with his client. Contrary to the petitioner's testimony, trial counsel testified that he had discussed the transfer hearing transcripts, which included Hightower's testimony. He further testified that he discussed his decision not to cross-examine Hightower with trial counsel for the co-defendants, but he could not recall whether he discussed this particular decision with his client. The post-conviction court accredited trial counsel's testimony and found that counsel's performance was not deficient.

Petitioners seeking post-conviction relief must prove their allegations by "clear and convincing evidence." Tenn. Code Ann. § 40-30-210(f) (1997). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, an appellate court is bound by

---

[4]The petitioner, Sanders, and Lofton were juveniles at the time that the crime took place. Thus, a hearing was held pursuant to Code section § 37-1-134 to determine whether the petitioner and his co-defendants should be transferred to criminal court to stand trial. *See* Tenn. Code Ann. § 37-1-134 (2001).

a trial court's findings of fact unless the facts of record preponderate against those findings. *Hicks*, 983 S.W.2d at 245.

When seeking post-conviction relief on the basis of ineffective assistance of counsel, a petitioner must establish that the services rendered or the advice given fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 525 S.W.2d 930, 936 (Tenn. 1975). He or she must also show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Both of the above prongs must be established for a petitioner to be entitled to relief. *Goad*, 938 S.W.2d at 370.

Generally, a petitioner may not criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). However, this deference to the tactical decisions of counsel only applies to those choices made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In this case the petitioner failed to establish at the hearing that the services rendered and advice given by his trial counsel fell below the range of competence demanded of attorneys in criminal cases. The decision not to cross-examine Hightower was made to prevent further damaging statements by Hightower. Although trial counsel admitted that he could have demonstrated that Hightower was lying, he concluded that the risk that Hightower would provide more damaging information outweighed the possible benefits of exposing Hightower's inconsistent statements. Thus, the post-conviction court determined that the trial counsel's decision was clearly a tactical decision that is to be afforded deference by a reviewing court; we agree. *See Randy D. Vowel v. State*, No. E2000-01300, slip op. at 5-6 (Tenn. Crim. App., Knoxville, April 24, 2001) (holding that a counsel's decision to not cross-examine a witness about inconsistent statements did not constitute ineffective assistance of counsel because the counsel's decision was informed and based upon a reasonable trial strategy); *Jackie William Crowe v. State*, No. E1998-00016, slip op. at 3-4 (Tenn. Crim. App., Knoxville, June, 20, 2000) (holding that a counsel's decision not to cross-examine the victim with her prior inconsistent statement was a sound tactic because the statement contained references to a variety of otherwise inadmissible prior bad acts); *Adkins*, 911 S.W.2d at0 347.

In his brief, the petitioner argues that trial counsel's decision not to cross-examine Hightower was uninformed. However, the record clearly demonstrates that trial counsel's decision was informed and made after adequate preparation and reflection. At the evidentiary hearing trial counsel testified that he met for about thirty minutes with the petitioner a day or two after his appointment as counsel. He also met with the petitioner on another occasion for about thirty minutes to discuss the remand transcripts. Trial counsel testified that he had lengthy discussions concerning the case with the petitioner on each of the four pretrial court dates. He testified that each of these discussions lasted an hour or more. At the evidentiary hearing, the state also presented evidence that trial counsel had filed a motion to suppress the statement of Billy Hightower, a motion for disclosure of the arrest histories of all potential witnesses, and a motion for disclosure of any impeaching

information. Trial counsel testified that he and the trial counsel for the petitioner's co-defendants had all the witness statements and information from the crime scene that were relevant to the case.

The petitioner specifically complains that trial counsel never consulted with him regarding Hightower's testimony and credibility. However, trial counsel specifically disputed that complaint. He testified that he and the petitioner went over a transcript obtained from the juvenile court, which contained Hightower's testimony. Furthermore, at the evidentiary hearing, trial counsel testified that he discussed "everything related to the case" with the petitioner. In its opinion, the post-conviction court noted these discrepancies and accredited the testimony of trial counsel. The petitioner has not demonstrated on appeal that the lower court erroneously found that trial counsel was an informed attorney who made a reasonable decision under the circumstances. In other words, the evidence supports the lower court's determinations.

The tactical decision made by trial counsel not to cross-examine Hightower was a reasonable decision, made by an informed attorney; it will not be second guessed by this court. Thus, the petitioner has failed to establish with clear and convincing evidence that the services rendered or the advice given by his trial counsel fell below "the range of competence demanded of attorneys in criminal cases." *Baxter*, 525 S.W.2d at 936.

Because the petitioner has failed to show by clear and convincing evidence that his trial counsel's performance was deficient, we do not need to address whether the petitioner was prejudiced by his counsel's alleged deficient performance. Thus, for the foregoing reasons, the post-conviction court's dismissal of the petitioner's petition for post-conviction relief is hereby affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE