106 F.3d 401
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Christina LEAP, Plaintiff-Appellant,
v.
Paul MALONE and F & K Leasing, Defendants-Appellees.
 No. 95-6470.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1996.
 
 Before: NELSON and DAUGHTREY, Circuit Judges, and COHN, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a personal injury case, filed in federal court on diversity grounds, in which the plaintiff appeals from a judgment entered on a verdict in her favor for three quarters of a million dollars. The plaintiff takes issue with (1) a directed verdict for the defendants on a claim for punitive damages, (2) the denial of a motion for additur, and (3) certain evidentiary rulings. Finding no error in any of the rulings in question, we shall affirm the judgment.
 
 
 2
 * On November 25, 1992, the plaintiff, college sophomore Christina Leap, was one of two passengers in a Dodge automobile that her grandfather, Paul Sipple, was driving on a state highway in McMinn County, Tennessee. Defendant Paul Malone, driving a 65-foot tractor trailer rig in the opposite direction, started to make a left turn directly in front of the oncoming Dodge. Mr. Malone either failed to see the Dodge or badly misjudged its distance from him. The automobile crashed head-on into the right rear wheels of the tractor. All of the occupants of the car were badly injured, and the second passenger, Mrs. Sipple, eventually died from her injuries.
 
 
 3
 Tennessee State Trooper Ray Yarber, Jr., arrived at the scene soon after the occurance of the accident, and he called for assistance from Trooper Ken Jones. The latter, an accident reconstruction expert, testified at trial that Mr. Sipple had less than two seconds to react to Mr. Malone's turn.
 
 
 4
 Trooper Yarber completed a Tennessee Uniform Accident Report form, checking boxes labeled "reckless endangerment" and "failure to yield." A McMinn County grand jury returned a "no bill" with respect to reckless endangerment, and Mr. Malone was never prosecuted for that offense. Both of the state troopers testified at trial that Mr. Malone had not been reckless, in their opinion.
 
 
 5
 Miss Leap suffered a severe closed head injury and internal bleeding of the brain. She remained in a coma for about a month, and she underwent four major operations during the course of her recovery. By the time of trial she had incurred medical expenses of $246,677.83, and she had received physical therapy for three years. It had been necessary for her to relearn her basic motor skills. With extensive tutoring, she had been able to resume a limited college curriculum.
 
 
 6
 Miss Leap and Mr. Sipple, on behalf of himself and as executor of Mrs. Sipple's estate, sued Mr. Malone and his employer in federal district court. The Sipple claims were settled prior to trial, and the defendants admitted liability for the damages suffered by Miss Leap. Before Ms. Leap's case came on for trial the district court (Collier, J.) granted motions in limine to exclude both the Uniform Accident Report and evidence concerning Mrs. Sipple's death and Mr. Sipple's injuries.
 
 
 7
 During the trial Dr. Anthony Gamboa, testifying as a "vocational economics" expert, offered an economic assessment of Miss Leap's pre- and post-accident abilities. He projected a lifetime wage loss of between $906,000 and $1.4 million. The former figure was described as "extraordinarily optimistic." The latter figure, Dr. Gamboa testified, was what the wage loss would come to if Miss Leap could never work again. Dr. Gamboa assumed that if the accident had not occurred, Miss Leap could have earned an average of $36,744 per year for 31.9 years; he further assumed that she would now average no more than $19,834 per year for no more than 21 years.
 
 
 8
 At the close of Miss Leap's case-in-chief the district court directed a verdict in favor of the defendants on the issue of punitive damages. The jury ultimately assessed Miss Leap's recoverable damages at $754,677.83. This figure represented the sum of the following components: (1) $246,677.83 for past medical expenses; (2) nothing for future medical expenses; (3) $275,000 for past pain and suffering; (4) $133,000 for future pain and suffering; and (5) $100,000 for loss of earning capacity. Miss Leap filed motions for a new trial, based on allegedly erroneous evidentiary rulings, and for an additur, based on the allegedly inadequate award for loss of earning capacity. The district court denied both motions. Ms. Leap has perfected a timely appeal.
 
 II
 
 9
 We turn first to the issue of punitive damages, an issue governed in this case by Tennessee law. Tennessee allows the recovery of punitive damages "only in the most egregious of cases." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn.1992). The least culpable mental state for which punitive damages may be awarded is "reckless"--and recklessness must be proved by clear and convincing evidence. Id. The Hodges court held that a person acts recklessly when he "is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." Id.
 
 
 10
 We believe the district court acted properly in directing a verdict on the issue of punitive damages. There is no evidence in the record, let alone clear and convincing evidence, to suggest that Mr. Malone's conduct was the result of anything more than inattention or a most unfortunate case of bad judgment. Trooper Jones--the accident reconstruction expert--testified that in his judgment Mr. Malone's behavior had been "accidental," not reckless. Trooper Yarber characterized Mr. Malone's decision to turn when he did as a "mistake;" Yarber rejected a label of "reckless." In light of all of the evidence presented in this case, we believe that a reasonable mind could draw only one conclusion--that there was no basis for a recovery of punitive damages. The directed verdict was therefore proper. See Arms v. State Farm Fire & Cas. Co., 731 F.2d 1245, 1248-49 (6th Cir.1984) (citing Holmes v. Wilson, 551 S.W.2d 682, 685 (Tenn.1977)).
 
 
 11
 In Womack v. Gettelfinger, 808 F.2d 446 (6th Cir.1986), cert. denied, 484 U.S. 820 (1987), this court reversed a punitive damages award in another diversity case arising out of an automobile-truck accident in Tennessee. We held there that the defendant truck driver, who caused the collision by turning onto a highway in dense fog, had not been guilty of such gross or wanton negligence as could justify an award of punitive damages. "[P]oor judgment and lack of ordinary care," we observed, "... [are] not the stuff of which ... punitive damages awards are made--at least not in Tennessee." Id. at 453. The Tennessee Supreme Court's decision in Hodges subsequently confirmed our understanding of Tennessee law, and we see no basis for deciding the case at bar differently than Womack v. Gettelfinger.
 
 III
 
 12
 Miss Leap argues that the district court should have granted an additur to the jury's $100,000 award for loss of future wages. She notes that her expert, Dr. Gamboa, offered the only evidence on the wage loss issue. Because Dr. Gamboa's testimony was "unimpeached [and] uncontradicted," Miss Leap argues, the jury acted irrationally in awarding a figure below the range proposed by Dr. Gamboa. We do not find the argument persuasive.
 
 
 13
 The jury was entitled to reject Dr. Gamboa's testimony entirely and to award no damages at all for future loss of wages. Miss Leap admits as much. Her argument boils down to the proposition that, having given some credence to Dr. Gamboa's testimony (as demonstrated by the award of some damages for future lost wages), and in the absence of alternative economic evidence, the jury had to accept the range proposed by Dr. Gamboa.
 
 
 14
 Defense counsel conducted an effective cross-examination of Dr. Gamboa, however, exposing apparent weaknesses in his opinion. And the jury could reasonably have concluded that the dismal picture of Miss Leap's future presented by Dr. Gamboa was contradicted by other evidence. Miss Leap herself testified that she hoped to become a physical therapist and had resumed--albeit with tutorial assistance--a college curriculum. The jury might well have believed that Ms. Leap would be able to work at full pay as a physical therapist, but that she would lose some earnings because her career would begin later than it would have done had there been no accident. This hypothesis is consistent with the jury's election to award no damages for future medical expenses. We are satisfied that the district court did not abuse its discretion in refusing to grant an additur.
 
 IV
 
 15
 The Federal Rules of Evidence govern diversity cases, see Laney v. Celotex Corp., 901 F.2d 1319, 1320 (6th Cir.1990), except where the state rule of evidence is substantive in nature. See, e.g., CMI-Trading, Inc. v. Quantum Air, Inc., 98 F.3d 887, 891 (6th Cir.1996) (applying state parol evidence rule in a diversity case).
 
 
 16
 * As noted above, the district court granted the defendants' motion in limine to exclude the Uniform Accident Report completed by Trooper Yarber. Tennessee law expressly prohibits the use of accident reports as evidence. Tenn.Code Ann. § 55-10-114(b). If this statute is "substantive," it must be applied in diversity cases. If the statute is merely "procedural," on the other hand, the Federal Rules of Evidence must be applied without regard to the statute.
 
 
 17
 The character of the Tennessee statute need not be definitively resolved here, for we do not believe that it was error to exclude the accident report under either hypothesis. If the Tennessee statute governs, the statute clearly prohibits introduction of the accident report. If the statute does not govern, Rule 403 of the Federal Rules of Evidence, the text of which is set forth in the margin, amply supports the decision to exclude the report.[1] The probative value of the accident report was minimal, given the fact that the investigating officers were available to testify. The unfair prejudice, on the other hand, was patent. Mr. Malone was not prosecuted for reckless endangerment, a Tennessee grand jury having decided not to indict him on this charge. Troopers Yarber and Jones testified that, in their judgment, Mr. Malone had not been reckless. We assume the plaintiff would have been permitted to explore any inconsistency between this testimony and the report. The district court knew, however, that there was no inconsistency--for Trooper Yarber testified (outside the jury's presence) that the reckless endangerment citation was issued due to the severity of the accident, not as a result of Mr. Malone's conduct. We cannot say that the district court abused its discretion in excluding the report.
 
 B
 
 18
 Neither did the district court abuse its discretion in granting the defendants' motion to exclude evidence of Mrs. Sipple's death and Mr. Sipple's injuries after the Sipple claims had been settled.
 
 
 19
 As the district court noted, Miss Leap's claim for pain and suffering was extensively explored through Ms. Leap's own testimony and the testimony of her mother and the treating doctors. The relevance of the Sipples' fates to the pain and suffering of Miss Leap was overshadowed by the unfair prejudice to which the defendants would have been exposed if this evidence had been introduced after the Sipple claims had dropped out of the case.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Rule 403 provides as follows:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."