Vickie G. MEDLIN, Plaintiff–Appellee,

v.

CLYDE SPARKS WRECKER SER-
VICE, INC., and Preston Wilson,
Trustee, Defendants–Appellants.

No. 01–5941.

United States Court of Appeals,
Sixth Circuit.

March 11, 2003.

Before SILER and ROGERS, Circuit Judges; and GWIN, District Judge.*

## OPINION

GWIN, District Judge.

In this state-law personal injury action, we decide: (1) whether the district court clearly erred when it denied defendants' motion for judgment as a matter of law as to plaintiff's claims for punitive damages; (2) whether the district court erred in not issuing findings of fact and conclusions of law regarding defendants's motion for a directed verdict or remittitur as to the punitive damages award; (3) whether the jury could award punitive damages after finding that the plaintiff had been negligent to a significant degree; (4) whether legally insufficient evidence supported the jury's award of punitive damages; (5) whether legally insufficient evidence supported the jury's allocation of fault; and (6) whether the district court abused its discretion by allowing the plaintiff's expert to testify that the defendants acted without reasonable care.

For the following reasons, we AFFIRM the district court's decisions on every issue appellants-defendants raise in this appeal.

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

History

On December 20, 1994, non-party Ruby Perkins' car became disabled on the west bound lane of Interstate 55 at the Third Street exit in Memphis. Interstate 55 takes up six lanes of traffic at the point where Ms. Perkins' car became disabled. A short concrete barrier in the median separated the opposing lanes of traffic. Ms. Perkins left her car in the left emergency lane, or median, and walked to a place where she telephoned Defendant Clyde Sparks Wrecker Services, Inc. ("CSWS") to tow her car. CSWS dispatched one of its employees, Paul Brown, to pick up the Perkins vehicle. At the time of the accident, Brown had been working for CSWS for six months and had never previously picked up a vehicle against a concrete barrier in the left median of an interstate.

After Perkins had left her car and while Brown was on his way to the scene, a car driven by Joanie Brossett struck the Perkins car.

After arriving at the scene, Brown pulled his flat-bed or "wrecker" truck into the left median of Interstate 55. Because of the width of his truck, portions of Brown's flat-bed truck protruded into a lane of traffic. Although a portion of the truck interfered with traffic, Brown awaited the arrival of the owner of the Perkins car while positioned in the emergency lane. As Brown waited, a large truck drove past his wrecker truck, narrowly missing it. After almost being struck, Brown called CSWS's dispatcher, Bobby Clark, to advise him of the situation. With Clark's permission, Brown drove away from the scene.

As Brown was headed for home, Clyde Sparks radioed Brown. Clyde Sparks

owns and is the president of CSWS. At trial, the plaintiff offered evidence that Sparks told Brown. "Paul, you know you ain't did nothing all day, you need to go back and get that car because you need to make that money. You been down all day." The plaintiff also offered evidence that Sparks never offered Brown any type of assistance nor called the police to seek assistance.

After speaking with Sparks, Brown returned to the scene to pick up the disabled vehicle. Neither CSWS nor Brown nor Sparks obtained police or other assistance to help load the Perkins car. Brown again parked his wrecker truck in the median. He did not set out red emergency reflectors or other devices as required by a state safety regulation. When parked, Brown's wrecker trucker protruded into the left-most lane of Interstate 55 several feet. At the accident location, the emergency lane is eighty-six inches wide. The flat-bed truck's width was ninety-one inches. Even if parked against the median wall, the bed of the flat-bed truck would extend into the lane of traffic. Beyond these simple measurements, Medlin offered testimony of two truck drivers who witnessed the accident from their position in the center lane of west-bound traffic. Floyd Walker testified that the CSWS flat-bed truck extended three feet into the lane of traffic:

> A. . . . As I got closer, I seen this car hauler on the left parked at an angle, part of it sticking out in the highway, and I thought, my goodness, somebody is going to get hurt here, bad place for an accident to get hurt or killed.
>
> Q. Tell me about that. How far was that wrecker out in that left-hand lane?
>
> A. Looked to me like it was about 3-foot out in that, sticking out in that left lane.

Truck Driver Travis Parker testified to similar effect.[1] Brown placed no warning devices behind the truck to warn oncoming motorists.

Near the time Brown returned the wrecker to the scene of the accident, the owner of the Perkins car, Tyrone Perkins,[2] also arrived at the scene. Brown then loaded the Perkins car onto his wrecker truck. While loading the car, the wrecker truck's red tail lights and top yellow bar light, as well as the red tail lights on the Perkins car were all flashing. The parties disputed whether oncoming vehicles could see the flashing lights or whether the view was blocked by the Perkins car loaded on the flat-bed truck.

After Brown loaded the Perkins car onto the bed of his truck, two police cars and a wrecker truck owned by a different wrecking service arrived. The police and the other wrecking service stopped on the right side shoulder of Interstate 55, across from Brown. The arriving vehicles activated their flashing lights.

In compliance with police regulations,[3] one of the police officers told Brown to

---

1. Parker testified:
   Q. Now, did—Was any part of that car hauler out in that left lane?
   A. Yes, sir.
   Q. About how far was it out in that left lane?
   A. The rear end was about two and a half feet in the lane.

2. Although Ruby was driving the car, Tyrone owned it.

3. A Memphis Police Department regulation prohibits a wrecker service from towing a vehicle involved in an accident until notified to do so by the investigating officer in charge of the scene. A police department rule requires that the wrecker service used to make the recovery be selected, by turn, from a list maintained by the police department, and it was Hutchinson Wrecker Service's turn to make this particular tow.

drive to a safe location to transfer the Perkins car from his truck to the wrecker truck that accompanied the officers to the scene.

Before Brown could drive away from the left median of Interstate 55, the Medlin accident occurred. Plaintiff Medlin, driving west on Interstate 55, passed three trucks. Medlin claims that she moved her automobile to the left so as to avoid the flashing lights of the two police cars and other wrecker that were parked on the right side of the highway. While passing the trucks, the left front portion of her car struck the protruding right rear corner of the bed of the wrecker truck. When Medlin collided with the right rear corner of the bed of CSWS's truck, Medlin was severely injured—the left side of her face was ripped back behind her head.

Plaintiff Medlin brought suit against the defendants, and on December 11, 2000, the district court commenced trial. Under an order bifurcating the trial, the jury first determined compensatory damages and allocation of fault among the plaintiff-appellee, the defendants-appellants, and the Memphis Police Department, a non-party to the action whose fault was relevant under the Tennessee comparative fault doctrine. On December 19, 2000, the jury reached a verdict concerning compensatory damages. The jury returned a verdict allocating 44% of fault to the plaintiff-appellee, 51% to the defendants-appellants, and 5% to the Memphis Police Department. The jury found Plaintiff–Appellee Medlin's total compensatory damages, irrespective of contributory negligence, to be $500,000.00. After reduction associated with her contributory negligence and the negligence of the Police Department, the jury verdict resulted in a compensatory award of $255,000.00 against the defendants-appellants.

After receiving the verdict on compensatory damages, the parties waived offering any additional evidence on plaintiff's claim for punitive damages. The jury returned a separate verdict of $500,000.00 on Medlin's claim for punitive damages.

On January 19, 2001, defendants-appellants filed a post-trial motion for judgment as a matter of law, for a new trial, and to alter or amend judgment under Rule 50 of the Federal Rules of Civil Procedure. On June 22, 2001, the district court denied the defendants-appellants motion. On July 20, 2001, defendants-appellants timely appealed the denial.

On appeal, the defendants challenge the district court's refusal to grant them judgement as a matter of law on plaintiff's punitive damages claim, the district court's failure to issue findings of fact and conclusions of law concerning the punitive damages award, and the district court's decision to allow the plaintiff's expert to testify that Defendant CSWS acted without reasonable care. The defendants also challenge the jury's allocation of the relative fault of the parties, and the jury's punitive damages award, claiming that the punitive damage award was excessive.

Standard of Review

A federal court in a diversity action under 28 U.S.C. § 1332 applies the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir.2001). Federal courts apply state law in accordance with the controlling decisions of the state's supreme court. *Hisrich v. Volvo Cars of North Am., Inc.,* 226 F.3d 445, 449 n. 3 (6th Cir.2000).

We determine whether a new trial is warranted under federal procedural law. *Adam v. J.B. Hunt Transp., Inc.,* 130 F.3d 219, 224 (6th Cir.1997); *Porter v. Lima Mem'l Hosp.,* 995 F.2d 629, 635 (6th Cir.

1993). When reviewing the district court's decision denying defendants' motions for a new trial, we review only for an abuse of discretion. *See Morales v. Am. Honda Motor Co.,* 151 F.3d 500, 506 (6th Cir. 1998); *Adam,* 130 F.3d at 224; *Porter,* 995 F.2d at 635. "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Beil v. Lakewood Eng'g & Mfg. Co.,* 15 F.3d 546, 551 (6th Cir.1994) (citation omitted).

A district court's determination of questions of law is reviewed *de novo. Loudermill v. Cleveland Bd. of Educ.,* 844 F.2d 304, 308 (6th Cir.1988). This Court reviews jury verdicts to determine if the verdict is supported by substantial evidence. *Coal Res., Inc. v. Gulf & W. Indus., Inc.,* 954 F.2d 1263, 1266 (6th Cir. 1992).

## Analysis

### Did the District Court Err in Denying Judgment as a Matter of Law on Medlin's Punitive Damage Claim?

Before addressing whether sufficient evidence supported the punitive damage award, we first consider the standard by which we review a punitive damages award under Tennessee law. Punitive damages punish the wrongdoer and deter future wrongdoing. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn.1992). Under Tennessee law, a jury may award punitive damages if the plaintiff proves by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly. *Id.* "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary

person would exercise under all circumstances." *Id.*

In reviewing this issue, we find that the district court did not err when it denied Defendant's motion for judgment as a matter of law. "In diversity cases, a state-law standard of review is applied when a Rule 50(b) motion for judgment as a matter of law is based on a challenge to the sufficiency of evidence necessary to support the jury's verdict." *Morales,* 151 F.3d at 506. In Tennessee, a motion for judgment notwithstanding the verdict is the state-law equivalent of a federal motion for judgment as a matter of law. *See* Tenn. R. Civ. P. 50.02; *Mairose v. Federal Exp. Corp.,* 86 S.W.3d 502, 510–11 (Tenn.Ct. App.2001) (describing the process of a motion for judgment notwithstanding the verdict.). In reviewing a motion for judgment notwithstanding the verdict in Tennessee, an appellate court is "required to review the record, discard all countervailing evidence, take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all reasonable inferences in his favor." *Id.* at 511 (citing *Williams v. Brown,* 860 S.W.2d 854, 857 (Tenn. 1993)). A motion for judgment notwithstanding the verdict is proper "only if, after assessing the evidence ..., [the court] determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Id.* (quoting *Eaton v. McLain,* 891 S.W.2d 587, 590 (Tenn.1994)).

We find the jury could have reasonably decided that CSWS, through its president/owner and employee Clyde Sparks and Brown, was aware of the substantial risk involved in towing the Perkins car from the median of Interstate 55 and failed to take the safety precautions that any ordinary person would exercise under the circumstances. Company President

Sparks knew the truck was positioned in a dangerous position. Sparks testified:

Q. Can we agree that in that particular conversation when Mr. Brown was pulling off, he said it was dangerous?

A. I'm sure he did. I agree it was dangerous.

The jury previously received testimony that Sparks directed Brown to return to the site, despite knowledge that positioning the tow truck was dangerous. Brown testified:

Q. At some point after you had taken off [from the site of the call], did Mr. Clyde Sparks get on the phone with you?

A. Yes, sir.

. . .

Q. What did Mr. Sparks say to you on the phone?

A. He said, "Paul, you know you ain't did nothing all day, you need to go back and get that car because you need to make that money. You been down all day."

A jury could reasonably find that Sparks acted recklessly—that is he was aware of, but consciously disregarded, a substantial and unjustifiable risk of such a nature that disregarding the risk constituted a gross deviation from the standard of care that an ordinary person would exercise under the circumstances.[4]

For the reasons stated by the dissent, this is indeed a close issue. The actions of CSWS perhaps are not as egregious as those in *Sakamoto v. N.A.B. Trucking Co.*, 717 F.2d 1000 (6th Cir.1983) and clearly not as egregious as the drag racing in *Honaker v. Leonard*, 325 F.Supp. 212 (E.D.Tenn.1971). On the other hand, the defendants' actions appear more egregious that the defendant's actions in *Leap v. Malone*, No. 95–6470, 1996 WL 742306 (6th Cir. Dec. 23, 1996) (defendant, driving a 65–foot tractor-trailer rig, started to make a left turn directly in front of a car coming in the opposite direction, either failing to see the oncoming car or badly misjudging it distance from him) or *Womack v. Gettelfinger*, 808 F.2d 446 (6th Cir. 1986) (during night and heavy fog, defendant drove his tractor-trailer onto a two lane highway from the driveway of a restaurant, made a wide right turn, swinging into the shoulder of the far side of the road; then an oncoming driver, confused by the position of the defendant's headlights in the night and fog, collided with the defendant's truck). The jury could reasonably find that CSWS consciously recognized the danger of the situation, and nonetheless recklessly proceeded to undertake the tow without getting police assistance and without putting out warning devices required by state law. On this close issue of Tennessee law, we are inclined to accept the state law conclusions of the

---

**4.** Furthermore, the jury could have awarded punitive damages against the defendants on the basis of Brown's actions. The jury could have reasonably found Brown reckless. At the time he positioned his flat-bed truck in the emergency lane, Brown knew the truck bed extended into the lane of traffic. Under Tennessee law, punitive damages may be awarded against a principal whose liability arises from the acts of an agent. *Dodson v. Anderson*, 710 S.W.2d 510, 513 (Tenn.1986); *Huckeby v. Spangler*, 563 S.W.2d 555, 559 (Tenn.1978), or a servant acting within the scope of his or her agency. *Memphis St. Ry.*

*Co. v. Stratton*, 131 Tenn. 620, 176 S.W. 105, 105–106 (1915); *see Odom v. Gray*, 508 S.W.2d 526, 526, 533 (Tenn.1974) (per curiam) (adopting the opinion of the court of appeals, which stated the rule).

Brown determined whether assistance was needed to recover the vehicle safely, and Brown knew that the bed of the tow truck extended into the lane of traffic. Despite this knowledge, Brown loaded the car and waited in the emergency lane without getting help to direct traffic around the obstruction. The jury could have found this conduct to have been reckless.

federal district judge sitting in Tennessee. *Cf. Bishop v. Wood,* 426 U.S. 341, 346, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

As the dissent notes, evidence of recklessness must be clear and convincing in order to support punitive damages under Tennessee law. The district court in this case, however, carefully instructed the jury as to the higher standard of proof required to find recklessness on the part of the defendants. We find the jury received sufficient evidence to enable them to make such a finding.

Since the jury had evidence from which they could reasonably infer recklessness, the jury was not in clear violation of the law when it awarded punitive damages to Plaintiff Medlin. Therefore, this Court affirms the district court's denial of Defendants' motion for judgment as a matter of law concerning Plaintiff's punitive damages claim.

Did the District Court Err in Not Issuing Findings of Fact and Conclusions of Law Approving or Decreasing the Jury's Award of Punitive Damages?

Appellant CSWS complains that the district court erred when it failed to follow a Tennessee procedural rule requiring trial courts to set out findings of fact and conclusions of law when punitive damages are awarded. Where punitive damages are awarded, the Tennessee Supreme Court requires a trial judge to "review the jury's award of punitive damages and 'clearly set forth the reasons for decreasing or approving all punitive awards in findings of fact and conclusions of law demonstrating a consideration of all factors on which the jury was instructed.'" *Culbreath v. First Tenn. Bank Nat'l Ass'n,* 44 S.W.3d 518, 528 (Tenn.2001) (quoting *Hodges,* 833 S.W.2d at 902). In denying CSWS's request for such findings and conclusions, the district court stated: "[a]lthough Tennessee substantive law applies to this case, federal procedural standards govern the consideration of the motion [for making findings of fact and conclusions of law in connection with the punitive damages award]."

■ The district court was correct. As this Court has previously held, Tennessee law requiring a trial court to "make findings of facts and conclusions of law approving the punitive damage award ... [is] a matter of procedure, and in a diversity action a federal court is not bound by state procedural rules." *Buziashvili v. Inman,* 106 F.3d 709, 719 (6th Cir.1997); *Roskam Baking Co., Inc. v. Lanham Mach. Co., Inc.,* 288 F.3d 895, 901 (6th Cir.2002) (In federal court, federal procedural rules must be applied even if they differ from otherwise applicable state rules and even if the difference is outcome determinative.).

Since the district court was not bound by the Tennessee procedural requirement, we find that it was unnecessary for the district court to make findings of fact and conclusions of law in connection with the punitive damages award. This Court finds no error in the district court's refusal to make such findings.

Is the Jury's Allocation of Fault Inconsistent with Its Finding that Punitive Damages Should Be Awarded?

Is the Jury's Award of Punitive Damages Excessive?

Is the Jury's Allocation of Fault Erroneous?

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted where the jury has reached a seriously erroneous result, as evidenced by (1) the verdict being against the weight of the evidence, (2) the damages being excessive, or (3) the trial being unfair to the moving party in some fashion. *Holmes v. City of Massillon,* 78 F.3d 1041, 1045–46 (6th Cir.1996). "In reviewing an award of punitive dam-

ages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur be ordered." *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 259, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

Under Tennessee law, punitive damages may be awarded if the plaintiff proves by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly. *Hodges*, 833 S.W.2d at 901. "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances." *Id.*

When determining punitive damages under Tennessee law, the jury must consider the following factors: (1) the defendant's financial affairs, financial condition, and net worth; (2) the nature and reprehensibility of defendant's wrongdoing, for example the impact of defendant's conduct on the plaintiff, or the relationship of defendant to plaintiff; (3) the defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm; (4) the duration of defendant's misconduct and whether defendant attempted to conceal the conduct; (5) the expense plaintiff has borne in the attempt to recover the losses; (6) whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior; (7) whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act; (8) whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and (9) any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award. *Id.* at 901–02. In applying these factors, the jury must consider "that the primary purpose of a punitive award is to deter misconduct, while the purpose of compensatory damages is to make plaintiff whole." *Id.* at 902.

In Tennessee, a punitive damages award will be set aside only "if it is grossly excessive or appears to be the result of passion, prejudice, improper sympathy, or for some other reason appears to constitute an injustice." *Coppinger Color Lab, Inc. v. Nixon*, 698 S.W.2d 72, 75 (Tenn. 1985) (citing 22 Am.Jur.2d 360–361, *Damages*, § 266 (1965)).

■ We find that the jury's award was neither inconsistent, excessive nor erroneous. Defendants have failed to persuade us to take the drastic step of overturning the jury's decision. As already stated, we believe that a reasonable jury could find that CSWS acted recklessly. The jury could therefore properly award punitive damages. In light of the nature of defendants' wrongdoing, the impact of defendants' conduct on the plaintiff, and the defendants' motivation in causing harm, the punitive damages were not grossly excessive.

Furthermore, defendants do not persuade us that the jury's allocation of fault was against the clear weight of the evidence. The evidence shows that CSWS did not place warning devices behind the truck and did not request police assistance. The jury found that CSWS acted irresponsibly and that their recklessness outweighed the recklessness of the police and Medlin. Even though Medlin was found almost as negligent as CSWS, this doe not

necessarily imply that CSWS was not reckless. The jury may have also considered Medlin to have been reckless, as CSWS counsel contended at oral argument. This Court finds no reason to upset the jury's decision.

We find that the district court properly instructed the jury, and the jury's resulting verdict was not clearly erroneous nor was it grossly excessive or the result of passion, prejudice or improper sympathy. Therefore, this Court refuses to disturb the jury's verdict or award.

Did the District Court Abuse Its Discretion by Allowing the Plaintiff's Expert to Testify that the Defendant Acted Without Reasonable Care?

The district court's ruling as to the admissibility of expert testimony is reviewed for abuse of discretion. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir.1998) (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

The District Court ruled that Plaintiff Medlin's expert, Mr. Kinman, had no "knowledge as to what negligence is as a matter of law" and therefore could not testify as to legal conclusions. Plaintiff Medlin's counsel asked Judge Gibbons whether he could ask Mr. Kinman "what should have been done by a wrecker service company that was exercising reasonable care for the safety of others at night under the circumstances." Judge Gibbons responded:

I don't really have a problem with his saying that's what should have been done under the circumstances in this case. I don't want him to say it was negligence not to do it or to use words that would be used in the court instructions. But I don't have a problem with him saying they didn't act in accord with the custom and practice in the industry, and they should have done so.

During the questioning of Mr. Kinman, Plaintiff Medlin's counsel asked Mr. Kinman whether he had an opinion on what "should have been done by a wrecker service that was exercising reasonable care for the safety of others." Defendants' counsel objected. The district court overruled the objection.

Defendants claim that the district court erred in allowing Mr. Kinman to testify using the language "reasonable care." They claim that since the district court instructed the jury that "[n]egligence is the failure to use ordinary or reasonable care," Mr. Kinman, in essence, testified as to whether or not CSWS was negligent.

In *Torres v. County of Oakland*, 758 F.2d 147 (6th Cir.1985), this Court addressed the issue of when lay testimony on an ultimate issue is "helpful" under Federal Rule of Evidence 701(b). We noted that the Advisory Committee counsels the exclusion of "opinions phrased in terms of inadequately explored legal criteria." *Id.* at 150; Fed.R.Evid. 704 advisory committee's note. While this Court expressed strong disfavor for this sort of testimony when it consists of a legal conclusion, realizing the danger of "conveying the witness's unexpressed, and perhaps erroneous, legal standards to the jury," we acknowledged that "it is often difficult to determine whether a legal conclusion is implicated." *Id.* Therefore, trial judges are afforded "a relatively wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion." *Id. Torres*, however, mandates exclusion of lay opinion testimony containing terms which have "a separate, distinct, and specialized meaning in the law different from that present in the vernacular." *Id.* at 151.

■ The use of the words "reasonable care" did not violate the *Torres* rule or have a meaningful impact upon the verdict.

*U.S. v. Parris,* 243 F.3d 286, 289 (6th Cir.2001) (holding that witnesses use of the term "illegal" did not violate *Torres*); Fed. R.Civ.P. 61. We find that the district court, having discretion in admitting or excluding testimony which arguably contains a legal conclusion, correctly found that the use of the term "reasonable care" in this instance did not convey a legal conclusion to the jury.

We hold that the district court did not err when it allowed Medlin's expert to testify as to whether or not CSWS used reasonable care.

### Conclusion

For the forgoing reasons this Court hereby AFFIRMS the judgment of the district court.

SILER, Circuit Judge, concurring in part and dissenting in part.

I concur in most of the conclusions reached in the decision by the majority. However, I respectfully dissent under issue (1). as I believe that the district court erred in denying judgment as a matter of law on Medlin's punitive damages claim.

I do not find that there is clear and convincing evidence by Medlin to show that Clyde Sparks Wrecker Service, Inc. (CSWS) acted recklessly in connection with this very unfortunate accident. As recognized by the parties, we use Tennessee law in this diversity case. Both sides agree that the principal case on punitive damages in Tennessee is *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn.1992). One caveat from that opinion is that: "[P]unitive damages are to be awarded only in the most egregious of cases." *Id.* at 901. The parties also agree that the only category of conduct supporting punitive damages in this case is recklessness.

Although the majority in upholding recklessness combines the conduct of both the driver, Paul Brown, and the owner of the wrecker service, Clyde Sparks, Medlin did not argue to the jury or the court anything about recklessness on the part of Brown. Instead, her whole theory was that Sparks knew that the recovery of a disabled vehicle on the left shoulder of the highway was dangerous and that he told Brown to go back to pick it up. There was nothing in the conversation between Brown and Sparks indicating that the wrecker protruded into the left travel lane when it was positioned to load the disabled vehicle. It was apparently Medlin's theory that because Sparks was greedy in trying to get his wrecker back to the scene and did not tell Brown to get police assistance to direct traffic, that showed recklessness. Medlin also couples that conduct by Sparks with her allegation that Sparks lied in court. According to Brown. Sparks did not tell him to check back with Sparks if Brown needed police or other assistance, but Sparks testified he did so advise Brown.

I believe that as a matter of law, the conduct here was not clear and convincing enough to support punitive damages under a standard of recklessness. Certainly, Sparks knew it was dangerous to use a wrecker on the shoulder of a busy highway. But wreckers do that all the time. Obviously, the situation would have been much better had Brown or Sparks called the police to direct traffic. However, at the time of the wreck involving Medlin, the police were already on the scene, although they were on the right shoulder of the highway, instead of the left side, where the wrecker had loaded the vehicle. Had the police not arrived on the scene when they did, Brown would have already left with the vehicle he was carrying, because he was loaded by the time the police arrived. The cause of the wreck was the protrusion by the wrecker into the left-hand lane of the highway.

Moreover, Medlin asserts that the allegedly perjured testimony by Sparks at trial is a factor to be considered in awarding punitive damages, citing *Metcalfe v. Waters*, 970 S.W.2d 448, 452 (Tenn.1998). That case involved attorney malpractice in which the attorney lied to his clients and subsequently admitted that he had lied. It did not involve alleged perjured testimony. If one were to use that as a basis for punitive damages, we would find such issues to crop up often when there is a dispute in the testimony at trial for all types of torts. No Tennessee case has ever approved of allegedly perjured testimony as a factor in determining punitive damages in the underlying case.

Sparks wanted to make money by towing cars. That is what a wrecker business does. He also realized that night work for wreckers on a busy interstate highway can be dangerous. However, that is not to say that such conduct is a conscious disregard of "a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Hodges*, 833 S.W.2d at 901. Punitive damages should be reserved for the most egregious of circumstances. Thus, a tractor-trailer driver's left turn directly in front of another vehicle was insufficient conduct to support an award of punitive damages in *Leap v. Malone*, No. 95–6470, 1996 WL 742306, at *1 (6th Cir. Dec. 23, 1996). Likewise, in a case decided before *Hodges*, but which was followed in *Leap*, in *Womack v. Gettelfinger*, 808 F.2d 446, 454 (6th Cir.1986), our court found that punitive damages under Tennessee law were not warranted when a truck driver pulled his vehicle out on the far side of the road in the fog without using flares, causing another vehicle to run into his rig. Likewise, in *Cappello v. Duncan Aircraft Sales of Florida, Inc.*, 79 F.3d 1465, 1475 (6th Cir.1996), our court found that punitive damages under Tennessee

law were not warranted, even though the pilot was guilty of gross negligence when carrying out his piloting responsibilities.

Only a few instances of conduct which warrant punitive damages can be found in Tennessee law. One such case is *Sakamoto v. N.A.B. Trucking Co.*, 717 F.2d 1000 (6th Cir.1983). There, punitive damages were approved against a truck driver and his employer when the driver, an habitual user of amphetamines, who had been without sleep for more than forty hours, attempted to turn his rig around on the interstate highway, trying to return the wrong way to an interchange he had passed just before his truck had broken down. While he was making his turn, the plaintiff ran into the rig. Similarly, in *Honaker v. Leonard*, 325 F.Supp. 212, 214 (E.D.Tenn.1971), decided before *Hodges*, the court upheld an award of punitive damages against a defendant who was drag racing on the highway, causing a collision with the plaintiff's vehicle. Without limiting these categories, I think that punitive damages are most likely allowed in vehicle collisions where a driver is impaired by alcohol or drugs, is speeding at an excessive rate or is traveling in the wrong lane. The parties have not cited Tennessee cases involving any of these acts, however.

For all these reasons, I would grant judgment as a matter of law on the issue of punitive damages on behalf of CSWS but affirm the remainder of the judgment.