Stewart B. **FRESH**, Plaintiff,

v.

**ENTERTAINMENT U.S.A. OF TENNESSEE, INC., d/b/a Platinum Plus, Defendant.**

No. 02–2674 M1.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 9, 2003.

854

David A. McLaughlin, Esq., Cochran, Cherry, Givens, Smith & Bolton, Memphis, TN, Jock M. Smith, Cochran, Cherry, Givens & Smith, Tuskegee, AL, for Plaintiff.

Sean A. Hunt, Spicer, Flynn & Rudstrom PLLC, Memphis, TN, for Defendants.

**ORDER DENYING MOTION FOR NEW TRIAL ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW ORDER GRANTING MOTION FOR RE-MITTITUR ORDER GRANTING MOTION FOR STAY OF EXECUTION AND ORDER DIRECTING DEFENDANT TO FILE SUPPLEMENTAL DOCUMENTATION OR POST BOND PENDING APPEAL**

MCCALLA, District Judge.

Before the Court is Defendant's Motion for New Trial, Motion for Judgment as a

Matter of Law, Motion for Remittitur, and Motion for Stay of Execution Pending Post Trial Motions and Appeal, filed September 8, 2003. Plaintiff responded in opposition on September 18, 2003. Defendant filed a reply on October 2, 2003. In its reply, Defendant requested oral argument on its motion. The Court believes oral argument is unnecessary and renders its decision based on the papers submitted by the parties. For the following reasons, the Court DENIES the motions for a new trial and for judgment as a matter of law, GRANTS Defendant's motion for remittitur, and GRANTS the motion for stay of execution.

## I. Background

The Court held a trial in this case from August 25–28, 2003. Plaintiff Stewart Fresh alleged that on January 20, 2002 he was a patron at Platinum Plus, a club owned by Defendant Entertainment U.S.A. of Tennessee, Inc. Plaintiff claimed that he was at the bar area getting a drink when employees physically removed from the club and took him to the parking lot where he was physically restrained with handcuffs, sprayed with pepper spray, and beaten. He sustained injuries including a broken nose and bruises on his legs. Defendant and its employees denied involvement in the incident. After hearing the evidence, the jury returned a verdict for Plaintiff in the amounts of $4,402.59 in medical expenses, $175,000.00 in compensatory damages, and $2,161,540.00 in punitive damages. The total amount of the jury's award is $2,340,942.59.

In the current motion, Defendant asserts that the verdict is against the weight of the evidence and that the Court made several errant evidentiary rulings that were prejudicial to its defense, which justify granting a new trial or the entry of judgment as a matter of law in favor of Defendant. Alternatively, Defendant asks the Court to remit the amount of the verdict. Finally, Defendant asks for a stay of execution pending appeal and the ability to post reduced security for the judgment in the form of a certified copy of its insurance policy.

## II. Standards of Review

The parties agree that in a motion for judgment as a matter of law "[i]n a diversity action such as this, a state law standard of review is applied when a Rule 50(b) motion is based on a challenge to the sufficiency of the evidence necessary to support the jury's verdict." *In re Anthony Steven Brown,* 342 F.3d 620, 626 (6th Cir.2003). "In Tennessee, a motion for judgment notwithstanding the verdict is the state-law equivalent of a federal motion for judgment as a matter of law." *Medlin v. Clyde Sparks Wrecker Svc.,* 2003 WL 1194245, 59 Fed.Appx. 770, 774 (6th Cir.2003). Therefore, the Court must "review the record, discard all countervailing evidence, take the strongest legitimate view of the evidence in favor of the nonmoving party, and allow all reasonable inferences in his favor." *Id.* (citation omitted). The Court should grant the motion "only if, after assessing the evidence ..., [the court] determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Id.* (citations omitted).

The authority to grant a new trial under Rule 59 is almost entirely within the discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). "[A] new trial is warranted when a jury has reached a seriously erroneous result as evidenced by ... the verdict being against the weight of the evidence." *Strickland v. Owens Corning,* 142 F.3d 353, 357 (6th Cir.1998). A "seriously erroneous result" is shown by: "(1) the verdict being against the weight of the

evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon,* 78 F.3d 1041, 1045–46 (6th Cir.1996). In *Strickland,* the Sixth Circuit explained the procedure a trial court should follow in ruling on a motion for a new trial:

> [I]n ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weight the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.

142 F.3d at 357 (quoting *Holmes,* 78 F.3d at 1045–46).

■ With respect to the motion for remittitur, "a motion for new trial seeking a remittitur of a jury's verdict ... should be granted only if the award clearly exceeds the amount which, under the evidence in the case, was the maximum that a jury could reasonably find." *Strickland,* 142 F.3d at 357 (citation omitted).

## III. Analysis

### A. Motion for Judgment as a Matter of Law

■ In its motion for judgment as a matter of law, Defendant challenges the sufficiency of the evidence in two areas: (1) whether the evidence established that Plaintiff's assailants acted as Defendant's agents and (2) whether Plaintiff established by clear and convincing evidence the requirements for punitive damages.[1] As discussed above, the Court must "take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all reasonable inferences in his favor." *Medlin,* 59 Fed.Appx. at 774.

On the issue of agency, Defendant maintains that no reasonable person could conclude that Plaintiff's alleged assailants, in particular Mike Thomas, were working as agents of Defendant on the night in question. Contrary to Defendant's assertions, during trial witnesses identified Mike Thomas as an employee of Platinum Plus, (Tr. at 442–443, 604), and identified him by photograph as one of Plaintiff's assailants. Mr. Ralph Lunati, owner of the club, also indicated he believed Mike Thomas was at the club on January 20, 2002 working through a security company hired by the club. (Tr. at 549–50.) The evidence on the question of agency and all reasonable inferences permitted the jury to conclude that Defendant's agents injured Plaintiff.

■ Defendant also argues that Plaintiff did not prove the requirements for punitive damages by clear and convincing evidence. Tellingly, Defendant's entire argument requesting judgment as a matter of law on the question of punitive damages is limited to a single conclusory sentence in its brief. (Def.'s Mem. in Supp. of Mot. for New Trial at 5.) Defendant offers no evidence, facts, or legal argument to counter the jury's express finding in its verdict that based on clear and convincing evidence Defendant acted intentionally, recklessly, maliciously, or fraudulently with respect to the assault, battery, and false imprisonment of Plaintiff. A reasonable jury could easily have arrived at this con-

---

1. The Court notes at the outset of its analysis that Defendant has failed to cite to any portion of the trial transcript or any of the exhibits in support of its arguments. It is, therefore, not possible to determine from Defendant's submissions what testimony and evidence Defendant relies upon in support of its motion.

clusion based on the facts of this case. The Court DENIES the motion for judgment as a matter of law.

### B. Motion for New Trial

Defendant requests a new trial for each of three reasons: (1) the verdict is against the weight of the evidence; (2) the damages awarded were excessive; and (3) the trial was unfair to Defendant because the Court issued several unfavorable rulings during the trial.

Defendant challenges the sufficiency of the evidence on the question of agency in its motion for a new trial. The Court heard the evidence during trial and has no reason to believe the jury reached a seriously erroneous result on this point.

 Defendant also suggests that the jury's award of compensatory damages is unreasonable and not supported by the evidence. "[A] jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Hill v. Marshall*, 962 F.2d 1209, 1215 (6th Cir.1992) (citing *Green v. Francis*, 705 F.2d 846, 850 (6th Cir.1983)). Although the amount of compensatory damages awarded in this case may be on the outer reaches of what the Court may consider to be reasonable for Plaintiff's injuries, pain, suffering, and humiliation, the jury's verdict will nevertheless be affirmed because the amount is, indeed, within the realm of reasonableness.

Plaintiff is a very slight man who described being attacked by much larger men without any provocation. He was beaten about the face, head, and legs, handcuffed, sprayed with mace, and suffered a broken nose. (Tr. at 313–15.) He testified that his face and clothing were covered in blood from the incident. (Tr. at 317.) Plaintiff also described being told by the manager that he could leave as long as he promised not to come back and sue. (Tr. at 315–16.) He adequately detailed the nature of the injuries, pain, suffering, and humiliation he suffered as a result of the beating. (Tr. at 323–30.) His testimony on these issues is sufficient for the Court deny the motion for a new trial based on the sufficiency of the evidence regarding damages.[2]

Defendant also argues that a new trial is warranted because the Court made unfair and prejudicial evidentiary rulings during the trial. The Court addressed each of the issues raised by Defendant before or during the trial. The arguments presented in Defendant's motion have not persuaded the Court that its decisions were incorrect or that a new trial is warranted.

The Court DENIES Defendant's motion for a new trial.

### C. Motion for Remittitur

 Defendant also asks the Court to remit the jury's verdict on punitive damages because it exceeds the limits of constitutional due process.[3] Plaintiff ar-

---

**2.** The Court will discuss the issue of punitive damages in the section 3.C. regarding the motion for remittitur.

**3.** It is not clear from the papers submitted whether Defendant is also asking the Court to remit the amount of compensatory damages. "The district court should reduce a jury's verdict only when the judgment 'clearly exceeds' the maximum amount of compensatory damages a jury could reasonably award. Thus, [a court] may reduce a jury award only

if it is 1) beyond the range supportable by proof, 2) so excessive as to shock the conscience, or 3) the result of a mistake." *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 679 (6th Cir.2000) (internal citations omitted). Though the verdict may be on the high end of the permissible damages range, given the evidence presented in the case, the jury's award of compensatory damages does not "clearly exceed" the amount of damages a jury could reasonably award.

gues in response that Defendant waived a defense based on the constitutionality of the punitive damages award by failing to plead this argument as a defense in its answer. Federal Rule of Civil Procedure 8(c) does not require a defendant to affirmatively plead a defense of constitutional due process in its answer.[4] Moreover, Defendant would have no way of knowing that a question of constitutional due process had arisen with respect to an award of punitive damages until after the jury rendered its verdict, making it impossible to plead as a defense at the outset of the case. Therefore, Defendant can not have waived its right to argue that the punitive damages award exceeds constitutional due process limitations. The Court will address Defendant's argument to remit the verdict based on constitutional due process.

■ Pursuant to the Due Process Clause of the Fourteenth Amendment, a "grossly excessive" punishment may not be imposed on a tortfeasor. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In evaluating whether an award is "grossly excessive", the Court in *BMW* analyzed three factors: (1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the harm or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the remedy and the civil penalties imposed in comparable cases. *Id.* at 575,

116 S.Ct. 1589; *Cooper Indus., Inc. v. Leatherman Tool Group*, 532 U.S. 424, 435, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585 (2003).

■ Among these factors, the Court noted that the "most important indicium of reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW*, 517 U.S. at 575, 116 S.Ct. 1589. To determine the reprehensibility of a defendant's conduct, a court must consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Campbell*, 123 S.Ct. at 1521.

■ Neither party has strongly focused on the first *BMW* factor, but the Court will briefly address the reprehensibility of Defendant's conduct.[5] The jury that heard this case found by clear and convincing evidence that Entertainment USA acted intentionally, recklessly, maliciously, or fraudulently with respect to the assault, battery, and false imprisonment of Plaintiff. The jury's determination as to

---

4. Rule 8(c) lists the following as defenses which must be set forth affirmatively: "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense."

5. Defendant's argument is limited to the blanket assertion that "the conduct, while it could be viewed as excessive force, is not outrageous. As a result, the reprehensibility of the conduct suggests a far more moderate award of punitive damages." (Def.'s Mem. in Supp. of Mot. for New Trial at 12; *see also* Def.'s Reply at 4.) Plaintiff's argument in response is essentially limited to the statement, "Violence against the Plaintiff and deprivation of personal liberty are the types of conduct that must be viewed as reprehensible in a civilized society." (Pla.'s Resp. at 11.)

punitive damages clearly bespeaks a finding that Defendant's conduct towards Mr. Fresh was reprehensible. Indeed, Plaintiff presented evidence as to the serious nature of the beating he received by Defendant's employees. (Tr. at 313–17.) Moreover, the jury also heard testimony from Michelle Lunati–Wall, who keeps the books and records for Platinum Plus, permitting strong inferences that Defendant attempted to cover up the beating by failing to create an incident report pursuant to their own procedures, (Tr. at 518), and by failing to keep the surveillance tape from the parking lot where Plaintiff was beaten despite receiving a call from Plaintiff and being notified by Plaintiff's counsel that there had been an incident on January 20, 2002, (Tr. at 523). The evidence presented during the trial showed reprehensible conduct sufficient to sustain the jury's decision to award substantial punitive damages.

 With respect to the second factor, the Court must examine the amount of the verdict more closely because the size of the punitive damages award is large in relation to the amount of compensatory damages. The Supreme Court recognized that an award of punitive damages must bear a "reasonable relationship" to the amount of compensatory damages. *BMW,* 517 U.S. at 580, 116 S.Ct. 1589 (finding that a $2,000,000 award of punitive damages did not bear a reasonable relationship to the $4,000 award of compensatory damages because it was 500 times the amount of the actual harm). While "reject[ing] the notion that the constitutional line is marked by a simple mathematical formula", *id.* at 582, 116 S.Ct. 1589, and noting that even a ratio of 500 to 1 does not automatically violate constitutional due process, but would "raise a suspicious judi-

cial eyebrow, *id.* at 583, 116 S.Ct. 1589 (citation omitted), the Court has suggested that the relevant ratio is "not more than 10 to 1", *id.* at 581, 116 S.Ct. 1589. On other occasions, the Court has advised that "few awards exceeding a single-digit ratio between punitive and compensatory damages ... will satisfy due process", *Campbell,* 123 S.Ct. at 1524, and that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety", *id.* (citing *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)).[6] Furthermore, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Campbell,* 123 S.Ct. at 1524 (stating that a compensatory award of "$1 million for a year and a half of emotional distress" was substantial and "likely would justify a punitive damages award at or near the amount of compensatory damages").

The amount of punitive damages awarded in this case (i.e.$2,161,540.00) is more than twelve times the amount of the already significant award of compensatory damages and medical expenses (i.e.$179,-402.59). Given the due process concerns expressed by the Supreme Court regarding punitive damage awards, the Court believes the punitive damages award in this case is clearly excessive despite the fact that the case involved physical harm to Plaintiff. Adding to the Court's concern is the fact that while Entertainment USA may be a successful company, the award represents more than one third of its yearly revenue and a much larger percentage of its income after expenses.

---

6. *But see Mathias v. Accor Economy Lodging, Inc.,* 347 F.3d 672, 674 (7th Cir.2003) (affirming punitive damages award of $186,000 where the amount of compensatory damages was only $5,000).

The award in this case is excessive when viewed as either a deterrent or punitive measure. Consistent with the decisions of the Supreme Court, this Court will remit the verdict to comply with constitutional due process limitations. The Court finds that, given the substantial amount of compensatory damages and medical expenses awarded in this case, a single-digit multiplier of four (4) appropriately complies with the constitutional limitations most recently set forth in *Campbell* while at the same time punishing Defendant and deterring similar behavior in the future. Accordingly, the Court REMITS the award of punitive damages to an amount of seven hundred seventeen thousand six hundred ten dollars and thirty-six cents ($717,610.36).

### D. Motion for Stay of Execution

▇ With respect to the motion for a stay of execution pending appeal, Plaintiff does not oppose Defendant's motion. The Court GRANTS Defendant's motion for a stay of execution pending disposition of any appeal in this matter. In its reply memorandum, Defendant requested permission to file a certified copy of its insurance policy with the Interstate Fire and Casualty Company, in lieu of posting a bond, as security for the judgment in this case. The Court has no indication as to whether Defendant's insurance company intends to satisfy any judgment in this case, or whether, for example, it has acted in this case based upon a reservation of rights. In such a circumstance, a certified copy of Defendant's insurance policy would provide very little security to Plaintiff. Therefore, Defendant is hereby ORDERED to file documentation with the Court evidencing the Interstate Fire and Casualty Company's intent to satisfy any judgment in this case as well as a certified copy of the insurance policy. Alternatively, Defendant is ORDERED to file a bond

in the amount of the reduced judgment in this case (i.e.$897,012.95).